Bruce F. BIRD, P.E., Respondent,

v.

MISSOURI BOARD OF ARCHITECTS, PROFESSIONAL ENGINEERS, PROFESSIONAL LAND SURVEYORS AND LANDSCAPE ARCHITECTS, Appellant.

No. SC 88710.

Supreme Court of Missouri, En Banc.

June 10, 2008.

As Modified on Denial of Rehearing Aug. 26, 2008.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kathleen R. Robertson, Asst. Atty. Gen., Jefferson City, for Appellate.

John E. Taylor, Leawood, for Respondent.

## MICHAEL A. WOLFF, Judge.

### Introduction

Can a licensed professional engineer be disciplined for affixing his seal to building plans that were drafted in large part by a licensed architect whose work was not done under the engineer's "immediate personal supervision"?

The Missouri Board for Architects, Professional Engineers, and Professional Land Surveyors and Landscape Architects (the board) brought this disciplinary proceeding against Bruce Bird, a professional engineer, after Landmark Builders of Blue Springs hired Bird to complete plans and drawings for a commercial building project when the architect Landmark originally retained for the project refused to complete them. The architect's refusal was based upon Landmark's refusal to pay an additional fee for completing the drawings after the original plans were disapproved by the planning commission of Independence, where the project is located.

The board's case against Bird was based upon a reading of the licensing statute as requiring that the work that Bird signed and sealed be done by him or under his "immediate personal supervision." Bird did not supervise the prior work of the architect, whose work Bird reviewed and modified to submit the final plans. There is no contention that the plans Bird submitted were substandard. Because of the lack of supervision of the architect, however, the Administrative Hearing Commission (AHC) concluded that Bird was subject to discipline. Based upon the AHC's conclusion, the board suspended Bird's license for three years to be followed by a year of probation.

This appeal requires the Court to construe the statute and regulations under which the board disciplines professional engineers. The statute, section 327.411 [1], requires an engineer to affix his or her personal seal "to all final documents ... prepared by the licensee, or under such licensee's personal supervision, and such licensee shall be held personally responsible for the contents of all such documents sealed by such licensee." The statute only allocates personal responsibility. It does not require that all work to which Bird affixed his seal be entirely the original work of the engineer or his supervised subordinates. Specifically, it does not require that the licensee personally supervise a co-licensee such as an architect.

Professional engineering is one of more than 240 occupations licensed and regulated by approximately 38 boards consisting principally of members of the licensed occupations. The late Walter Gellhorn, one of the architects of modern administrative law, wrote more than 50 years ago:

"Occupational licensing ... is—or rather should be—a prophylactic measure, intended to save the public from being victimized. It is not—or, rather, it should not be allowed to continue to be—an economic weapon intended to strengthen the licensees." [2]

---

1. All statutory references are to RSMo 2000.

2. Walter Gellhorn, INDIVIDUAL FREEDOM AND GOVERNMENTAL RESTRAINTS, 145 (Louisiana State

Occupational licensing boards deserve deference in cases that require technical expertise in their respective fields. But this is not such a case. The resolution of this case depends on the interpretation of the licensing statute—a question that is not committed to the discretion of the licensing board, nor dependent on its expertise, but is a question for the courts ultimately to resolve on judicial review when called upon to do so.

For reasons that follow, the disciplinary decision is reversed.

### Facts

Landmark Builders of Blue Springs, Inc. entered a contract in April 2001 with architect Allen McInnis under which McInnis's architectural firm agreed to design "Cardinal Woods Commercial", a warehouse and office for Landmark located in the city of Independence.

McInnis submitted a set of drawings to Landmark called "Final Site Plan and Grading Plan Lot 1, Cardinal Woods Commercial," which included site plan drawings, landscape drawings, architectural drawings and structural drawings. McInnis did not sign the plans or affix his seal to the drawings.

After reviewing the proposed plans, Landmark submitted McInnis's unsealed drawings to the City of Independence Planning Commission. The planning commission rejected the plans and informed Landmark of the modifications that must be made in order to secure the planning commission's approval.

Landmark requested that McInnis modify the plans to meet the requirements of the planning commission. McInnis made the necessary modifications, and Landmark's president learned that the planning

commission approved the revised plans but would need construction drawings. McInnis sent Landmark an invoice for $17,000, an extra fee because such modifications were not factored into the initial contract price. McInnis refused to sign and seal the plans until Landmark paid for the modifications.

Landmark refused to pay McInnis the additional fee. Landmark instead contacted Bruce Bird's engineering firm to complete the original plans, get final city approval and serve as the engineer of record on the project. Bird made the modifications necessary to secure the planning commission's approval, including structural calculations for the building, computations for storm water runoff and detention, revisions to roof structure and relocation of a doorway. When Bird had completed the necessary modifications, he signed and affixed his engineer's seal to each page of the plans. Landmark submitted the plans bearing Bird's seal to the planning commission.

McInnis informed the planning commission in May 2002 that he had not authorized the use of his drawings by either Landmark or Bird. McInnis stated that he planned to sue Landmark and that disciplinary proceedings against Bird concerning this matter were pending. McInnis also filed a police report in which he alleged that his drawings had been stolen.

When Bird became aware of McInnis's complaints, he contacted the planning commission and requested permission to withdraw the plans for Cardinal Woods Commercial.

### Procedural History

The board filed a complaint in May 2003 against Bird with the AHC alleging that,

University Press 1956). Gellhorn, a native of St. Louis, was a longtime professor at Columbia University Law School.

by signing and affixing his seal to McInnis's drawings, Bird had violated board regulations 4 CSR 30–3.030(7)[3] and 4 CSR 30–13.010[4], which subject Bird to discipline under section 327.441.2(6).[5]

After a hearing, the commission found that Bird had violated board regulations 4 CSR 30–3.030(7) and 4 CSR 30–13.010 and authorized discipline under section 327.441.2(6). Following the AHC's decision, the board imposed a three-year suspension of Bird's engineering license followed by one year of probation.

Bird timely filed a petition for review and a motion to stay enforcement of the board's order in the Cole County Circuit Court. The circuit court granted the stay. After a review of the administrative record, the circuit court concluded that the AHC's decision to authorize discipline by the board was "unlawful, unreasonable and unsupported by substantial and competent evidence on the record as a whole." The circuit court then remanded the cause to the commission for rehearing and findings consistent with the court's decision.

On appeal, the court of appeals found that the petition for review Bird filed in the circuit court was insufficient and dismissed the appeal. This Court granted transfer and has jurisdiction. Mo. Const. Art. V, sec. 10. The circuit court's stay of the disciplinary order has remained in effect during the pendency of this appeal.

## Judicial Review

Because the court of appeals dismissed Bird's appeal, it is necessary to consider whether Bird's petition filed in the circuit court was adequate to invoke judicial review.

▆▆▆ At the outset, it should be noted that the court of appeals' focus on the petition for review is misplaced because the petition plays little or no role in the appellate court process. When a circuit court's judgment is appealed, the appellate court does not review the circuit court's decision, but rather the agency decision, that is, the AHC's findings and conclusions, and the board's discipline.[6] *Tendai v. Missouri State Bd. of Registration for Healing Arts*, 161 S.W.3d 358, 365 (Mo. banc 2005). Accordingly, the circuit court's judgment—and of course the petition for review that began the circuit court process—is of no particular interest when the matter is appealed either to the court of appeals or to this Court.[7]

Nonetheless, the court of appeals ruled that the circuit court lacked "jurisdiction" over the case because Bird's petition for review did not raise specific issues. Thus,

**3.** 4 CSR 30–3.030(7) (2003) provided that "[t]he signing and sealing of plans, specifications, estimates, reports and other documents or instruments not prepared by the professional engineer or under his/her immediate personal supervision is prohibited." *Id.*

**4.** 4 CSR 30–13.010 (2003) outlined the circumstances under which the Board will deem the licensee to have immediately supervised a project. Under 4 CSR 30–13.010, the Board will deem a project to have been prepared under the immediate personal supervision of a licensee only when "the individual licensed with the board shall supervise each step of the preparation of the plans, specifications, drawings, reports, engineering surveys or other documents and has input into their preparation prior to their completion."

**5.** Section 327.441.2(6) makes a licensee subject to discipline for violating any statute or regulation that relates to licensing.

**6.** Rule 100.02 outlines the procedural requirements for seeking review of an administrative decision in an appellate court.

**7.** While the decision reviewed on appeal is that of the AHC and not the circuit court, an appellate court reverses, affirms or otherwise acts upon the judgment of the trial court. Rule 84.14.

the court of appeals said, it had nothing it could review. Accordingly, the court of appeals dismissed the appeal and remanded the case to the circuit court "with directions to dismiss Bird's petition for judicial review of the AHC's decision."

### The Petition Was Sufficient

■ Neither the statutes nor the civil rules set standards for what a petition for review must contain. The fact pleading specified for civil cases by Rule 55.05 is inapplicable. Judicial review usually consists of questions of law,[8] as specified by section 536.140.2, which describes the scope of judicial review for cases such as this disciplinary matter: "[T]he court's inquiry may extend to a determination of whether the action of the agency is in violation of constitutional provisions, is in excess of the statutory authority or jurisdiction of the agency, is unsupported by competent and substantial evidence upon the whole record, is, for any other reason, unauthorized by law, is made upon unlawful procedure or without a fair trial, is arbitrary, capricious or unreasonable, or involves an abuse of discretion." Section 536.140.2(1) to (7). On judicial review, the "court shall hear the case without a jury and shall hear it upon the petition and record filed . . . ." Section 536.140.1.

■ Bird's petition mirrors the language of section 536.140.2. Bird's petition "seeks review of the findings of fact in the Final Order because it is in violation of constitutional provisions, is in excess of the statutory authority or jurisdiction of the agency, is not supported by competent and substantial evidence upon the whole record, was upon unlawful procedure, is arbitrary, capricious or unreasonable and involves an abuse of discretion."

Although section 536.110 does not explicitly set forth the requirements for a sufficient petition, Bird's petition is sufficient to outline the issues for the reviewing court and the adverse party. *See Citro v. City of Lee's Summit*, 658 S.W.2d 86, 89 (Mo.App.1983).

While a court may find it desirable for a petition to define precisely the issues to be reviewed, a precise definition of the issues is not required by statute or rule. In a proceeding such as this, the petition sometimes is written and filed before the full administrative record becomes available. The circuit court may require the party seeking review to specify the precise issues the party is raising. *See, e.g.,* Rule 62.01. Or the circuit court may require the party seeking review to amend the petition with greater particularity. *Cf.,* Rule 55.27(d). The petitioner seeking review will specify and explain the issues for the circuit court in the memoranda of law, briefs, or other written submissions required by the circuit court. Certainly in this case, the circuit court appeared to have no difficulty in rendering a cogent decision that dealt with the issues raised by the parties.[9]

After the circuit court judgment is rendered, the court's decision can be appealed as in other civil cases. On such appeals, the appealing party sets forth the legal issues he wishes to raise in the "points relied on" section of the appellate brief as

---

8. There are some cases, for instance, where review of an administrative decision requires fact finding by the circuit court. Section 536.140.4 provides that when a statute authorizes a court to "weigh the evidence and determine facts for itself" the court may hear evidence "which could not have been produced or was improperly excluded before the agency." This is not one of those instances.

9. *Burgdorf v. Bd. Of Police Comm'rs,* 936 S.W.2d 227, 231 (Mo.App.1996), and *Dino v. State Bd. Of Pharmacy,* 909 S.W.2d 755, 758 (Mo.App.1995), are overruled to the extent that they require a petitioner, in order to avoid dismissal, to set forth a precise definition of issues in the petition for review.

required by Rule 84.04(d). The appellate court, as noted, then reviews the decision of the AHC and the board, not the judgment of the circuit court. The circuit court's review is not completely irrelevant, however, because the circuit court proceeding undoubtedly shapes the issues for review in the appellate courts if there is an appeal. And, in many instances, the circuit review resolves matters so no appeal is taken.

Bird's petition and other submissions provided the circuit court with a sufficient basis upon which to review the decision of the AHC and the board. Section 536.140.1. That is all that section 536.110 requires.

### The Legal Basis for the Board's Complaint

■ The central point of the board's case against Bird is that he signed and affixed his seal to the Cardinal Woods Commercial plans, much of which originally was the work of architect McInnis and his associates.[10] The board charged, and the AHC agreed, that this constituted a violation of section 327.411 and regulations promulgated under the statute, specifically 4 CSR 30–3.030(7) and 4 CSR 30–13.010.

A licensed architect or engineer is required to have a "personal seal" that the licensee is to affix to all final documents "including but not but not limited to, plans,

specifications, estimates, plats, reports, surveys, proposals and other documents or instruments prepared by the licensee, or under such licensee's *immediate personal supervision,* and such licensee shall be held personally responsible for the contents of all such documents sealed by such licensee." Section 327.411.1 (emphasis added.)

The AHC decision raises the question of whether Bird was required to have exercised "immediate personal supervision" over architect McInnis in order to have affixed his seal to drawings included the work of McInnis. One possible answer to this question—advocated by the board—is that such supervision is precisely what the statute requires and that Bird has violated the law because he did not supervise McInnis, even though Bird had no relationship with McInnis. The other possible answer, suggested by the context of the statute and regulations, is that the "immediate personal supervision" requirement applies to preparation of documents by non-licensed personnel, such as draftsmen, and is intended to ensure that all drawings and documents are prepared under the standards of the regulated professions, architecture and engineering. In any event, the licensed professional who signs and seals the documents shall be "personally and professionally responsible" for them. Section 327.401.1.[11]

---

**10.** This appeal does not involve delineating the sometimes overlapping roles of architects and engineers. The AHC's decision holds that Bird's "conduct is not cause for discipline as the unlicensed practice of architecture because it is within the scope of his engineering license." The commission's conclusion is not challenged.

**11.** The board promulgated 4 CSR 30–13.010(1)(D) in 2003 to address situations in which a licensee who originally creates a work becomes unavailable. It provides that "[i]n circumstances where a licensee in responsible charge of the work is unavailable to

complete the work, or the work is a site adaptation of a standard design drawing, or the work is a design drawing signed and sealed by an out-of-jurisdiction licensee, a successor licensee may take responsible charge by performing all professional services to include developing a complete design file with work or design criteria, calculations, code research, and any necessary and appropriate changes to the work. The non-professional services, such as drafting, need not be redone by the successor licensee but must clearly and accurately reflect the successor licensee's work. The burden is on the successor licensee to show such compliance. The

After the AHC found that Bird was subject to discipline, the board held a hearing to impose discipline. Bird complains in this appeal that, during the disciplinary hearing, the assistant attorney general urged the board to impose substantial discipline because architect McInnis' career has been "ruined" by this case. As to that, it may be noteworthy that McInnis sued the client, Landmark, for the additional amounts he claimed were due. McInnis not only lost the claim for additional compensation, but Landmark was awarded $15,906—the amount Landmark had paid McInnis—in its counterclaim against McInnis for failing to provide drawings that would be approved by the city of Independence.[12] Whatever else may be said of the attorney's comment, it seems to express the view that the purpose of regulating the professions of architecture and engineering is to provide financial protection for the members of those regulated professions. This view indicates a fundamental misunderstanding of the purpose behind professional regulation. While some financial protection of licensees may be an effect of professional regulation, the public's protection—not the licensees'—is the purpose of professional regulation. *Duncan v. Missouri Board for Architects*, 744 S.W.2d 524, 535–536 (Mo.App.1988).

This purpose is nowhere better shown than in *Duncan*, in which the court of appeals reviewed the discipline cases brought by the board against a group of engineers involved in designing the Hyatt Regency Hotel walkways that collapsed in Kansas City in 1981, killing 114 persons and injuring about 186. *Id.* at 527. The court upheld the discipline of the engineers who, among other things, affixed their seals but failed to review shop drawings prepared by employees of the steel fabricator for the structure that collapsed. *Id.* at 542. The version of section 327.411 in effect at that time referred to affixing the seal to documents "prepared by him, or under his direction." *Id.* at 535. The conduct at issue in Duncan, however, was not the failure to supervise, but the failure to review and check plans and drawings for which the licensed engineers were legally responsible. *Id.* at 541.

In the case against Bird, the AHC found that, by signing and affixing his seal to the Cardinal Woods Commercial plans, Bird violated regulations 4 CSR 30–030(7) and 4 CSR 30–13.010. 4 CSR 30–13.010 defines "immediate personal supervision", the phrase used in the statute. The regulation describes the conditions under which "[s]pecifications, drawings, reports, engineering surveys or other documents will be deemed to have been prepared under the immediate personal supervision of an individual licensed with the Board." 4 CSR 30–13.010(1). The regulation also states that an "individual licensed with the Board shall supervise each step of the preparation of the specifications, drawings, reports, engineering surveys or other doc-

---

successor licensee shall have control of and responsibility for the work product and the signed and sealed originals of all documents." Because subsection 1(D) became effective on June 30, 2003, after the conduct at issue in this case occurred, it does not apply in Bird's situation.

12. This disciplinary proceeding began after McInnis complained to the board. As a matter of economic reality, the complaint against Bird appears to be part of the fee dispute between McInnis and Landmark. Regardless of the merits of his position, McInnis appears to have refused to finish the work, in accordance with the city's requirements, and to affix his seal to final documents unless the client agreed to pay a fee in addition to that already paid by the client. The client, Landmark, brought in engineer Bird to finish the final drawings in accordance with the requirements of the city of Independence, and affix his seal, rather than to accede to McInnis' request for additional payment.

uments and has input into their preparation prior to their completion." *Id.* at subsection 3.

Under the statute, affixing one's seal to a document makes an engineer "personally responsible for the contents of all such documents sealed by such licensee" *unless* the licensee specifically disclaims responsibility for some document relating to or intended to be used for *any* part of the engineering project. Section 327.411.1 to 3. Placement of personal liability upon the licensee furthers the interest of public safety by providing extra incentive for licensees to guarantee their work.

The AHC acknowledged that, in modifying the plans for Cardinal Woods Commercial, Bird thoroughly reviewed both his changes and McInnis' work to ensure the safety and quality of the plans. By affixing his seal to the plans, Bird became personally responsible for any defect in both his modifications and McInnis's original plans.

■ Section 327.411, and by extension 4 CSR 30–13.030, impose an *affirmative* duty on licensees to ensure the quality of the work they complete and to accept personal responsibility for documents they seal. In authorizing the board to punish Bird for affixing his seal to the modified plans originally drafted by McInnis or his associates, the AHC misconstrued both section 327.411 and 4 CSR 30–13.030 as being prohibitive in nature. Section 327.411 provides that a licensee "shall affix the seal to all final documents ... prepared by the licensee, or under such licensee's immediate personal supervision." *Id.* 4 CSR 30–13.030 defines what qualifies as "immediate personal supervision" for purposes of clarifying the kind of supervision that triggers the licensee's duty to affix his seal. By affixing his seal to the plans, Bird fulfilled his affirmative duty under both the statute and the regulation. Since he fulfilled his affirmative duty under the

statute, the AHC's authorization of Bird's discipline was improper.

■ In authorizing the board's discipline of Bird based on a violation of 4 CSR 30–13.030, the AHC misinterpreted the statutory authorization underlying the regulation. The purpose of section 327.411 is to impose liability upon licensees in the case of defect by requiring a licensee who affixes his or her seal to be fully responsible for the work. Regulation 4 CSR 30–13.030 cannot go beyond this statutory purpose. The regulation, therefore, may define "immediate personal supervision" only for the *purpose of a licensee's personal liability.* As interpreted by the AHC and the board, regulations 4 CSR 30–3.030(7) and 4 CSR 30–13.030—in which the board explains "immediate personal supervision"—go well beyond the purpose and authority of section 327.411. Contrary to the AHC's decision in this case, the regulations do not function to protect the property interest of other co-licensees.

■ The AHC also found that Bird violated 4 CSR 30–3.030(7). Unlike 4 CSR 30–13.030, the language of 4 CSR 30–3.030(7), which was repealed in 2004, is prohibitive in nature. 4 CSR 30–3.030(7) prohibits "[t]he signing and sealing of ... documents or instruments not prepared by the professional engineer or under his/her immediate personal supervision." To be faithful to the purpose of section 327.411, the regulation means that a licensed engineer *may not* seal documents prepared by an unlicensed subordinate unless the engineer has *directly supervised* the unlicensed individual's work. Subsection 7 does not apply to situations in which two licensees work separately on a project. As indicated by the use of the statutory term "immediate personal supervision," subsection 7 is limited to prohibiting a licensee from affixing his seal to the work of non-licensees in the absence of immediate personal supervision. This prohibition en-

sures that engineers supervise the work of non-licensee employees in order to ensure the safety and quality of their work which, in turn, protects public safety. Because it applies to supervision of non-licensee employees, and not to prior work of licensees such as McInnis, the AHC incorrectly authorized discipline of Bird for violating subsection 7. The regulation cannot require that Bird supervise McInnis, another licensee.

The regulation can and does, however, offer a licensee the option of specifying which portions of the completed work the licensee takes responsibility for and which portions of the work are the responsibilities of other licensees. Subsection 6 of 4 CSR 30–13.030 states that "[i]n the instance of one (1) licensee performing design for other licensees to incorporate into his/her documents, each licensee shall seal, date and sign those documents, using the appropriate disclaimer for *clarification of each licensee's responsibility.*" It follows that if a licensee does not use "the appropriate disclaimer for *clarification of each licensee's responsibility,*" the licensee becomes responsible for the entire project.

■ By not delineating his modifications from McInnis's earlier work, Bird assumed responsibility for the entire project, a consequence that Bird fully accepted. Bird may face professional discipline if the final product to which he affixes his seal does not meet the standards of the profession as embodied in the licensing statute. There is, however, no contention that the final work signed and sealed by Bird was deficient. The AHC and the board have no authority to impose discipline on a licensee simply for not distinguishing his work from that of another licensee where the licensed professional takes responsibility for the entire work.

■ The AHC erred in focusing on the "immediate personal supervision" language of the statute and regulations and overlooking the common meaning of the word "prepared." The statute says "prepared," not "drafted." The use of the word "prepared"—in the context of affixing a seal to plans, drawings and other such documents—does not mean that the licensee in fact drafted each piece from scratch. If "prepared" means that each work is thoroughly the original product of the licensee, it would follow that architectural and engineering drawings and details cannot contain portions that are non-unique, such as non-original customary features or details copied from the work of others, perhaps from standard texts, or from previously used drawings. The statute and regulations are not intended to ensure that all works of licensees are thoroughly original or to enforce copyright protections.[13]

The statute and regulations were enacted to ensure that a licensed professional such as Bird takes full personal responsibility for the documents that are prepared, affixed with his seal, and submitted to the governmental authorities for permits and provided to the builders to use in constructing a project.

After Bird reviewed the plans, drawings and other documents, he made modifications so that they would be accepted by the city. Bird conducted a thorough review of the documents; there is nothing in the record to suggest that Bird did not check and re-calculate, as appropriate, all of the computations, measurements, and drawings, including those that had been drafted by architect McInnis and his associates. In doing so, Bird "prepared" the documents—within the meaning of the statute—for submission to the city and for

---

**13.** When Bird received McInnis's drawings, Landmark's attorney assured him that Landmark, having paid McInnis for them, owned the documents. Whether the attorney was correct is not properly the subject of this disciplinary proceeding.

use in building the project. By affixing his seal, and thereby accepting responsibility for the entire project, Bird acted in compliance with the statute.

### Conclusion

Engineer Bruce Bird's work conformed to the licensing statute. He is not subject to discipline. The decision of the Administrative Hearing Commission is reversed.[14]

STITH, C.J., PRICE, TEITELMAN, and RUSSELL, JJ., and PERIGO, Sp.J., concur.

BRECKENRIDGE, J., not participating.

---

**14.** Rule 84.14 provides that an "appellate court shall award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, in whole or in part, or give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case." In this case, the circuit court reversed the decision of the AHC and remanded the case to the AHC for "rehearing and findings not inconsistent" with the order. Normally, this Court would affirm or reverse the decision of trial court. In this case, however, the circuit court was correct in its decision to reverse the decision of the AHC, but there was, for the reasons set forth above, no basis for remand. Accordingly, the decision of the Administrative Hearing Commission is reversed pursuant to Rule 84.14.