**Cathy RINEHART, Assessor, Clay County, Missouri, Respondent,**

v.

**Robert and Donna BATEMAN, Appellants.**

**No. WD 73954.**

Missouri Court of Appeals, Western District.

Feb. 21, 2012.

Jonathan Sternberg, Kansas City, MO, for appellants.

Patricia L. Hughes, Liberty, MO, for respondent.

Before Special Division: JAMES E. WELSH, Presiding Judge, CYNTHIA L. MARTIN, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

Robert and Donna Bateman (collectively, the "Batemans") appeal from the judgment of the Clay County Circuit Court reversing the decision of the State Tax Commission (the "STC") finding that agriculturally classified property (the "Property")[1] owned by the Batemans met the statutory requirements to be valued at its productive capability rather than at its fair market value.

We find the STC did not err in concluding that the Property, which all parties agree was properly classified as agricultural, met the statutory requirements to be valued at its productive capability and not at its fair market value. We reverse the judgment of the trial court reversing the decision of the STC.

## Factual and Procedural History

The material facts are not in dispute. In approximately 1996, the Batemans pur-chased the Property, which is located at N.W. 68th Street and N. Broadway Avenue in Clay County, for $240,000. The Property consists of 3.3 unimproved acres. The Property is zoned commercial. Beginning in 2007, and continuing through the proceedings relevant to this appeal, the Batemans began using the Property for hay cultivation. Mr. Bateman planted red clover on the Property and hired McKinnie's Custom Hay Baling ("McKinnie") to cut, rake, and bale the clover into hay. Although the Batemans sell the hay they cultivate, their efforts have not been profitable.

In 2009, the Assessor classified the Property as agricultural, and assigned it a fair market value of $374,500, resulting in an assessed value of $44,940.[2] The Batemans appealed the assessment to the Clay County Board of Equalization which affirmed the Assessor's determination on July 16, 2009. The Batemans then filed a complaint for review of assessment with the STC.

An evidentiary hearing was held before the STC's Senior Hearing Officer Luann Johnson ("Hearing Officer Johnson"). At the hearing, both the Assessor and the Batemans agreed the Property should be classified as agricultural, though the parties reached this conclusion in different ways.

The Assessor argued that the Batemans' Property did not fall within the definition of "agricultural" set forth at section 137.016.1(2).[3] Instead, the Assessor ar-

---

1. The Property is actually comprised of two contiguous parcels, one of which is located in Gladstone, Missouri and the other of which is located in Kansas City, Missouri. As a result, in the proceedings before the STC, there were two separate case numbers assigned to the Batemans' appeal of the assessments on the Property. In the evidentiary hearing before the STC, and in the proceedings before the trial court, however, the technically separate assessments were effectively treated as one. For purposes of this appeal, we treat the two parcels as one, and thus collectively refer to the two parcels as the Property.

2. Pursuant to section 137.115.5, agricultural property is assessed at 12% of its true value.

3. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

gued the Property should be classified as agricultural pursuant to section 137.016.5, a statute which describes the factors to be evaluated to determine the classification of vacant and unused property based on its "immediate most suitable economic use." As a result, the Assessor argued that section 137.017.4, which addresses the assessment of vacant and unused agricultural property, requires the true value of the Property to be determined based on its fair market value. The Assessor presented the expert testimony of Gary Maurer ("Maurer"), a commercial appraiser. Maurer testified that the Property's "immediate most suitable economic use" was commercial.[4] Maurer testified that the Property should be assigned a fair market value, therefore, based on sales of comparable commercial property. However, Maurer felt the agricultural assessment rate of 12% should be applied to this fair market value.[5] Maurer thus opined that the Property's fair market value was $575,000, and that its assessed value should be 12% of this true value.[6]

In contrast, the Batemans argued that the Property is being used for an agricultural purpose, consistent with the definition of "agricultural" set forth in section 137.016.1(2). As such, the Batemans argued that section 137.017.1 requires the true value of the Property to be determined based on its productive capability. The Batemans argued this value should be $400.

The Batemans presented evidence about their hay baling operations on the Property. The Assessor did not contest that the Batemans are conducting hay baling operations on the Property. The Assessor argued, however, that because the operations were neither profitable nor likely to become profitable, the use was not truly agricultural, but instead a ruse to secure a more favorable valuation of the Property.

Hearing Officer Johnson found that the Property's use fell within the definition of "agricultural" set forth at section 137.016.1(2). Hearing Officer Johnson found that because the Property was being used for an agricultural purpose, sections 137.016.5 and 137.017.4 (relating to vacant and unused land and its valuation if agricultural) were inapplicable. Hearing Officer Johnson thus concluded that section 137.017.1 mandated determining the true value of the Property based on its productive capability. Because the parties both agreed the appropriate land grade for the Property was a grade 7, Hearing Officer Johnson assigned a productive capability value to the Property of $75 per acre based on the STC's promulgated regula-

---

4. Though this was the Assessor's expert's testimony, the Assessor classified the Property as agricultural at the time of her initial assessment, and agrees on appeal that "[t]he Property is properly classified as agricultural property." (Assessor's Brief, p. 20)

5. *See* discussion, *infra*, at footnote 15, where we question this practice.

6. The record does not explain why the Assessor claims (as she did in her initial assessment of the Property) that the fair market value of the Property is $374,500, considerably less than the fair market value assigned the Property by Maurer. We are aware that section 138.060.1 prohibits an assessor in a

hearing before the STC or a court of competent jurisdiction on "an appeal of assessment from a first class charter county or a city not within a county" from advocating or presenting "evidence advocating a valuation higher that that value finally determined by the assessor or the value determined by the board of equalization, whichever is higher[.]" This statute does not apply to the present case, however, as Clay County is not a first class charter county. Moreover, the Assessor clearly did not act in a manner consistent with a belief that section 138.060.1 applied, as she presented evidence advocating a higher valuation for the Property than that determined by the Assessor and the board of equalization.

tions.[7] Based on this true value, Hearing Officer Johnson determined the Property had an assessed value for tax years 2009 and 2010 of $30.[8]

The Assessor filed an application for review of Hearing Officer Johnson's decision with the STC. The STC entered its order affirming Hearing Officer Johnson's decision on April 13, 2010.

The Assessor then filed a petition for judicial review of the STC decision in the Circuit Court of Clay County. The trial court reversed the decision of the STC finding that the Batemans were not engaged in an agricultural use of the Property because an agricultural use presumes a potentially profitable business benefit. The trial court concluded, therefore, that the Property should be treated as vacant and unused and classified as agricultural following application of the statutory factors set forth at section 137.016.5. The trial court further concluded that section 137.017.4 required the vacant and unused agriculturally classified Property to be afforded a true value in the amount of its fair market value, and not its productive capability. The trial court found the assessed value of the Property for 2009 and 2010 to be $44,940, the amount originally assessed by the Assessor and affirmed by the Clay County Board of Equalization.[9]

This appeal followed. The Batemans filed the appeal as the party aggrieved by the trial court's decision. However, pursuant to Rule 84.05(e), we review the decision of the STC and not of the trial court.[10] Thus, Cathy Rinehart, Clay County Assessor, ("the Assessor") filed the appellant's brief as the party aggrieved by the STC's decision.

## Standard of Review

On an appeal from a judgment of a trial court addressing the decision of an administrative agency, we review the decision of the administrative agency and not the judgment of the trial court. *Bird v.*

7. Section 137.021.1 provides, in pertinent part, that land "devoted primarily to the raising and harvesting of crops" shall be graded by the assessor based on factors set forth in the statute. The STC is directed by section 137.021.1 to "publish a value based on productive capability for each of the several grades of agricultural and horticultural land."

8. Section 137.115.5 provides that agricultural property shall be assessed at 12% of its true value.

9. As the assessed value of agricultural property is 12% of its true value pursuant to section 137.115.5, the trial court necessarily concluded that the fair market value of the Property was $374,500, the value originally determined by the Assessor. We observe the Assessor never offered any evidence in the hearing before the STC to support this valuation, but relied exclusively on the testimony of Maurer, who opined the Property had a fair market value of $575,000 based on the sale of comparable commercial property. Because we otherwise conclude that the trial court's judgment should be reversed, we need not further address whether the record as a whole would have supported a conclusion that the fair market value of the Property was $374,500, or whether the Assessor could rely exclusively on the presumption that the assessed value fixed by the board of equalization is correct, notwithstanding her evidence of contrary value. *See Cohen v. Bushmeyer*, 251 S.W.3d 345, 348 (Mo.App. E.D.2008) (holding there is a presumption that the board of equalization's valuation is correct, with the burden on the taxpayer to rebut the presumption with substantial and persuasive evidence).

10. Rule 84.05(e) says: "If the circuit court reverses a decision of an administrative agency and the appellate court reviews the decision of the agency rather than of the circuit court, a party aggrieved by the circuit court decision shall file a notice of appeal and the record on appeal and shall file with the record on appeal a notice designating the party that is aggrieved by the agency decision. The party aggrieved by the agency decision shall file the appellant's brief and reply brief, if any, and serve them within the time otherwise required for the appellant to serve briefs."

*Mo. Bd. of Architects,* 259 S.W.3d 516, 520 n. 7 (Mo. banc 2008). Notwithstanding, in our mandate, we reverse, affirm or otherwise act upon the judgment of the trial court. *Id.*

■ "Pursuant to Mo. Const. art. V, section 18 and section 536.140, we must determine 'whether the agency's findings are supported by competent and substantial evidence on the record as a whole; whether the decision is arbitrary, capricious, unreasonable or involves an abuse of discretion; or whether the decision is unauthorized by law.' " *Henry v. Mo. Dept. of Mental Health,* 351 S.W.3d 707, 712 (Mo.App. W.D.2011) (quoting *Coffer v. Wasson–Hunt,* 281 S.W.3d 308, 310 (Mo. banc 2009)).

■ "[A] court reviewing the actions of an administrative agency should make a 'single determination whether, considering the whole record, there is sufficient competent and substantial evidence to support the award.' " *Albanna v. State Bd. of Registration for Healing Arts,* 293 S.W.3d 423, 428 (Mo. banc 2009) (quoting *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003)). Though we "consider[ ] the entire record to determine whether the decision is supported by competent and substantial evidence, ... '[w]e may not substitute our judgment on the evidence for that of the agency, and we must defer to the agency's determinations on the weight of the evidence and the credibility of witnesses.' " *Henry,* 351 S.W.3d at 712 (quoting *Stacy v. Harris,* 321 S.W.3d 388, 393–94 (Mo.App. S.D. 2010)). "We 'must look to the whole record in reviewing the Board's decision, not merely at that evidence that supports its

decision, *'and we no longer view the evidence in the light most favorable to the agency's decision.'* "[11] *Id.* (quoting *Lagud v. Kansas City Bd. of Police Comm'rs,* 136 S.W.3d 786, 791 (Mo. banc 2004) (emphasis added)).

■ When an administrative agency decision is based on the agency's interpretation and application of the law, we review the administrative agency's conclusions of law and its decision *de novo,* and we make corrections to erroneous interpretations of the law. *Algonquin Golf Club v. State Tax Commission,* 220 S.W.3d 415, 418 (Mo. App. E.D.2007).

■ In this case, the STC incorporated the decision of Hearing Officer Johnson into its order. "This court reviews the decision of the STC and not the hearing officer, *Cohen v. Bushmeyer,* 251 S.W.3d 345, 350 n. 4 (Mo.App. E.D.2008), unless, as here, the STC incorporated the decision of hearing officer, in which case we consider both together, *Loven v. Greene County,* 94 S.W.3d 475, 477 (Mo.App. S.D.2003)." *Peruque, LLC v. Shipman,* 352 S.W.3d 370, 374 (Mo.App. E.D.2011).

### Analysis

The Assessor raises two points on appeal. For her first point, the Assessor claims that the STC erred in its decision because the Property should have been treated as vacant and unused property and assessed based on its fair market value instead of its productive capability. For her second point, the Assessor claims that treating the Property as devoted primarily to an agricultural use creates a lack of uniformity within a subclass of real property inconsistent with legislative intent and

11. As a point of clarity, we note that the case relied upon by the Batemans to describe our standard of review, *Algonquin Golf Club v. State Tax Commission,* 220 S.W.3d 415, 418 (Mo.App. E.D.2007), incorrectly holds that "[w]e consider the evidence in the light most favorable to the Commission, together with all reasonable inferences therefrom" citing to authority decided prior to *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003).

constitutional mandate. Specifically, the Assessor claims that the STC's decision creates a "new subclass of vacant property" that qualifies for a lower tax assessment based on its productive capability. We disagree with the Assessor as to each of her points relied on.

### Point Relied on I

For her first point, the Assessor claims that the STC erred in concluding that the Property qualified for productive capability valuation. The Assessor argues the Property was not being used for an agricultural purpose and should have been treated as vacant and unused property and assessed based on its fair market value.

The Assessor and the Batemans agree that the Property should be classified as agricultural. However, the Assessor and the Batemans disagree about why the Property should be so classified. The Batemans claim their use of the Property falls within the statutory definition of agricultural. The Assessor claims the Property must be classified as agricultural after applying the statutory factors relevant to classifying vacant and unused property. The distinction is material, as it determines whether the true value of the Property must be assigned based on its productive capability or its fair market value.

The resolution of this dispute is controlled by the Missouri Constitution and Chapter 137. Article 10, section 4(a) of the Missouri Constitution provides that "[a]ll taxable property shall be classified for tax purposes as" either real property (class 1), tangible personal property (class 2), or intangible personal property (class 3).

Article 10, section 4(b) of the Missouri Constitution provides, in pertinent part,

that "[p]roperty in class[ ] 1 ... and subclasses of [that] class[ ], *shall be assessed for tax purposes at its value or such percentage of value as may be fixed by law for each class and each subclass.*" (Emphasis added.) Article 10, section 4(b) further provides that "[p]roperty in class 1 shall be subclassed in the following classifications: (1) Residential property; (2) Agricultural and horticultural property; (3) Utility, industrial, commercial, railroad, and all other property not included in subclasses (1) and (2) of class 1."

Though the only permitted subclassifications of real property are those described in article 10, section 4(b), that section of the Missouri Constitution further provides that "[p]roperty in the subclasses of class 1 *may be defined by law,* however, *subclasses (1), (2), and (3) shall not be further divided, provided, land in subclass (2) may by general law be assessed for tax purposes on its productive capability.*" (Emphasis added.)

Collectively, these provisions of the Missouri Constitution authorize the legislature to: (1) adopt statutory definitions for the three subclassifications of real property recognized by the Constitution, (2) set the percentage of value which shall serve as the assessed value for property within each subclassification, and (3) enact statutes which permit property subclassified as agricultural to be valued (and thus assessed) based on productive capability. The legislature has exercised its constitutional authority in each of these respects.

The legislature has defined the three subclassifications of real property in section 137.016.1. Relevant to this case, section 137.016.1(2)[12] defines "agricultural and horticultural property," in pertinent part, as:

---

**12.** The parties cite to section 137.016.1(1) as the definition of "Agricultural and horticultural property" and per section 137.016.1(1) RSMo Cum.Supp.2009 and 2010, and the 2011 session laws, Vernon's Missouri Session Laws, Laws of the 96th General Assembly,

2011 First Regular Session, at 843 (2011), that would be correct. However, the most current online version of section 137.016, provided by the website of the Missouri General Assembly, provides for the definition of

[A]ll real property *used for agricultural purposes and devoted primarily to the raising and harvesting of crops* [.]

(Emphasis added.) Thus, if the use of real property fits within this definition, the property is classified as agricultural.

The legislature has also enacted section 137.115.5 which sets the percentage of value which shall serve as the assessed value for property within each of the three sub-classifications. Relevant to this case, section 137.115.5 provides that all property classified as agricultural is to be assessed at 12% of its "true value in money."

■ Normally, "true value in money" is the equivalent of fair market value. *Aspenhof Corp. v. State Tax Comm'n*, 789 S.W.2d 867, 869 (Mo.App. E.D.1990). Thus, in the ordinary case, "[t]rue value in money is the price which the property would bring from a willing buyer when offered for sale by a willing seller." *Cohen v. Bushmeyer*, 251 S.W.3d 345, 348 (Mo. App. E.D.2008) (citing *Missouri Baptist Children's Home v. State Tax Com'n*, 867 S.W.2d 510, 512 (Mo. banc 1993)). However, as noted, the Missouri Constitution authorizes the legislature by "general law" to permit an alternative means of calculating the "true value in money" of agricultural property based on its productive capabili-

ty. Consistent with this authority, section 137.017.1 provides that for assessment purposes:

[T]he true value in money of land *which is in use as agricultural* and horticultural *property, as defined in section 137.016,* shall be that value which such land has for agricultural or horticultural use.

(Emphasis added.) In contrast, section 137.017.4 provides that for assessment purposes:

[T]he true value in money *of vacant and unused land which is classified as agricultural* and horticultural *property under subsection 3* [13] *of section 137.016* shall be its fair market value.

(Emphasis added.) Simply stated, therefore, if real property is classified as agricultural because its use falls within the statutory definition of "agricultural" set forth at section 137.016.1(2), then section 137.017.1 requires the property to be valued at its productive capability. However, if the use of real property does not qualify as agricultural pursuant to the statutory definition, the property is treated as vacant and unused land and is classified by its "immediate most suitable economic use," determined by consideration of the eight factors described in section 137.016.5.[14] If this process results in the

"Agricultural and horticultural property" in section 137.016.1(2). Section 137.016 (2011) *available at* http://moga.mo.gov/statutes/C100–199/1370000016.HTM. Moreover, in cases where the agricultural classification has been discussed, the definition has been cited as 137.016.1(2). *See, e.g., Alpha One Properties, Inc. v. State Tax Commission*, 887 S.W.2d 390, 391 (Mo. banc 1994); *Norwin G. Heimos Greenhouse, Inc. v. Director of Revenue*, 724 S.W.2d 505, 509 (Mo. banc 1987). In this opinion, we thus refer to section 137.016.1(2), when referring to the definition of "Agricultural and horticultural property."

13. Subsection 3 of section 137.016 was renumbered as subsection 5 in the amendment

of section 137.016 by L.1995, H.B. No. 211, section A. We refer to this provision in the Opinion as section 137.016.5 based on its current numbering.

14. Section 137.016.5 provides that "[a]ll real property which is vacant, unused, or held for future use; ... or for which a determination as to its classification cannot be made under the definitions set out in subsection 1 of this section, *shall be classified* according to its immediate most suitable economic use, which use shall be determined after consideration of" eight factors described in the statute. (Emphasis added.) Section 137.016.5 does not elevate "vacant and unused" property into an additional subclassification of real

property being classified as agricultural, then section 137.017.4 requires the property to be valued at its fair market value.

This backdrop brings us squarely to the issue framed by the instant case. Did the Batemans' use of their Property fall within the definition of "agricultural" set forth in section 137.016.1(2), or is the Property vacant and unused but nonetheless properly classified as agricultural following consideration of the factors set forth in section 137.016.5?

■ Determining whether a property's use falls within one of the subclassification definitions set forth in section 137.016.1 is an issue of fact for the STC. Given the definition of "agricultural" set forth in section 137.016.1(2), the STC was required to determine whether the Batemans' hay cultivating operation was an "agricultural purpose" such that the Property was "devoted primarily to the raising and harvesting of crops."

Here, the uncontested evidence was that the Batemans have been cultivating hay on the entirety of the Property since 2007. Mr. Bateman testified that hay had previously been baled on the Property in June 2007, October 2007, July 2008, October 2008, and July 2009, and that at the time of the hearing, he had an agreement in place for future hay baling. Mr. Bateman testified that he paid $750 for each baling

in 2007 and 2008 and $800 for baling in 2009. Mr. Bateman testified that he then sold the bales of hay. Mr. Bateman also submitted into evidence photographs of the hay baling operation, a copy of relevant advertisements placed in the newspaper, his bill for red clover, a copy of the check that he used to pay for soil testing, a copy of the soil test report, his agreements with McKinnie to do the baling, copies of bills from McKinnie, copies of checks paying McKinnie, and copies of checks paying the Batemans for the hay. Mr. Bateman acknowledged that the hay cultivation operations on the Property were not profitable.

The Assessor conceded that hay is a "crop" and that hay production can be an agricultural use.[15] The Assessor did not contest any of the Batemans' evidence about their hay baling operations. Instead, the Assessor argued that the Batemans' hay baling operations were not a legitimate agricultural use because they were not profitable and were intended to manipulate the valuation of the Property.

To support this claim, the Assessor called Maurer, the appraiser, as a witness. Maurer testified that the "immediate most suitable economic use" of the Property was commercial and that its fair market value based on commercial comparables is $575,000. However, Maurer nonetheless felt the Property should be assessed at the

property—a legislative initiative that would be prohibited by article 10, section 4(b) of the Missouri Constitution. Instead, section 137.016.5 provides for a means of subclassifying real property into one of the three constitutionally authorized subclassifications if the property does not otherwise fit within one of the statutory definitions set forth at section 137.016.1.

Though section 137.016.5 seems to treat "vacant, unused" property and property "for which a determination as to its classification cannot be made under the definition set out in [section 137.016.1]" as distinguishable, a plain reading of section 137.016.1 reveals that "vacant, unused" property is but a subset of

property which does not otherwise fall within one of the statutory definitions set out in section 137.016.1, each of which requires a particular use of and/or particular improvements to property. Thus, real property that ends up being classified as agricultural following evaluation of the factors set forth in section 137.016.5 is "vacant, unused" land because it is *not being "used for agricultural purposes,"* excluding it from the ambit of section 137.016.1(2)'s definition of "agricultural."

15. *See City of Clinton v. Terra Foundation, Inc.,* 139 S.W.3d 186, 191 (Mo.App. W.D. 2004) (Hay is an agricultural crop).

agricultural rate of 12%.[16] Maurer based his valuation on a belief that the Property was not being used for an agricultural purpose, but was instead vacant and unused, because the Batemans' hay baling operation was not "a profitable agricultural use." Maurer also testified that in determining whether agricultural property should be afforded a true value based on its productive capability, he evaluates three criteria: (1) whether the property is greater than five acres in size; (2) whether the property adjoins or is being held for future agricultural use by the same owner with several neighboring tracts already in productive agricultural use; and (3) whether the property has a soil grade with a productive use grade of six or better. Maurer opined that in order for agriculturally classified property to qualify for productive capability valuation, two of these three criteria must be satisfied. Maurer testified that the Property met none of the criteria.

When Hearing Officer Johnson inquired of Maurer about the origin of the objective criteria relied upon by Maurer to conclude that the Property was not being used for an agricultural purpose but was instead vacant and unused, Maurer conceded that he did not know. Maurer claimed that the criteria were written in his manual (not the official "Assessor's Manual"), but without reference to any authority. Maurer claimed that the criteria came from the STC 20 or 25 years ago. Maurer further testified that there is another informal rule that a property should be making at least $2,500 annually from agricultural operations to be entitled to productive capability valuation. On cross-examination, when Maurer was asked to identify where any of his criteria are located within Chapter 137, the Assessor's counsel interjected and conceded that "it's very clear it isn't in the statute, it's a custom and practice that's developed over many years and has tried to be consistently applied."

■ "A presumption exists that the assessed value fixed by the [Board of Equalization] is correct." *Cohen*, 251 S.W.3d at 348. "Substantial and persuasive controverting evidence is required to rebut the presumption, with the burden of proof resting on the taxpayer." *Id.* The STC found that the Batemans' evidence that the Property was used for hay production in 2007, 2008, and 2009 was substantial and persuasive to establish an agricultural use of the Property. The STC is the judge of credibility of the witnesses appearing before it, and of the evidence. *Id.* We defer to the STC on the weight of the evidence and the credibility of witnesses. *Henry*, 351 S.W.3d at 712. Our review of the record as a whole suggests that the STC's factual conclusion about the use of the Property is supported by competent and substantial evidence, and is not arbitrary, capricious, or unreasonable.[17]

---

**16.** In our decision in *Bateman v. Rinehart*, WD 73947, handed down on the same date as the opinion in this case, we reject as unlawful Maurer's assumption that section 137.016.5 authorizes property to be valued based on one subclassification, but assessed based on another. The plain language of section 137.016.5 provides that the eight factors therein described are to be considered to "classify" vacant, unused property based on its "immediate, most suitable economic use." Section 137.115.5 plainly sets out the assessment rate to be applied to the true value in money of property once classified, and makes no allowance for classifying property in one category, but assessing it based on the rate applicable to another category. Here, Maurer's legally suspect assumption is immaterial to our decision as, despite Maurer's claim that the Property should be "classified" as commercial, the Assessor conceded the proper classification for the Property is "agricultural." Moreover, even the trial court, whose judgment we are reversing, did not accept Maurer's opinion either as to classification or as to value. *See* footnote 9.

**17.** After Hearing Officer Johnson entered her decision, and in connection with the application for review filed by the Assessor with the

The Assessor disagrees. It is the Assessor's position that the Batemans are taking advantage of a legal loophole, and that even though they are using the Property for what the Assessor concedes can be an agricultural purpose (hay baling), because the use is not economically sensible, it is not an "agricultural use" as defined by section 137.016.1(2).

The Assessor's position requires us to ignore the plain language of sections 137.016.1(2) and 137.017.1, and requires us to impose unwritten constraints and limitations on when the use of property for an agricultural purpose qualifies as a use permitting productive capability valuation. The Assessor cites no authority for its proposition that as a matter of law hay production, though an agricultural use, can only qualify for productive capability valuation if the use is profitable, or if the property in question meets other objective criteria like those suggested by Maurer.

Statutory construction is a matter of law. The primary rule of statutory construction is to determine the legislative intent from the language used in the statute by considering the plain and ordinary meaning of the words used therein. Where the language is clear and unambiguous, we will give effect to the language as written, and will not engage in statutory construction. This Court presumes that the legislature intended that every word, clause, sentence, and provision of a statute have effect and should be given meaning. Conversely, we presume that the legislature did not include excess language or idle verbiage in a statute. Courts are not authorized to read a legislative intent into a statute that is contrary to the intent made evident by the plain and ordinary meaning of the statutory language.

*Shipman v. DNS Electronic Materials, Inc.,* 267 S.W.3d 751, 758 (Mo.App. E.D. 2008) (internal citations and quotation marks omitted). Here, the clear and unambiguous language of section 137.016.1(2) defines "agricultural" (in pertinent part) as "use for agricultural purposes and devoted primarily to the raising and harvesting of crops." The definition of "agricultural" is devoid of any discussion of profitability, minimum acreage requirements, soil grades, or other "objective" criteria as mandatory conditions before property can be classified as "agricultural." Further the plain language of section 137.017.1 provides that "land which is in use as agricultural ... property, as defined in section 137.016" shall be valued based on its productive capability. Again, eligibility for this favored valuation is not conditioned on profitability, or any of the other objective criteria posited by the Assessor. We are

STC, the Assessor presented affidavits arguing that the Property had to be treated as vacant and unused because the Batemans' agricultural use was not a permitted use under local ordinances given the Property's commercial zoning. The STC noted that evidence of this "fact" was not presented nor established by the Assessor during the evidentiary hearing before Hearing Officer Johnson, and that as a matter of law, Hearing Officer Johnson could not have committed error in failing to consider the Property's zoning. The STC further found that regardless of the Property's commercial zoning, the Property was used to harvest hay from 2007 through 2009 and that the plain language of section 137.016.1(2) mandates that property devoted primarily to the raising and harvesting of crops is to be classified as agricultural property. The STC concluded, therefore, that even if the Batemans' use of the Property violated zoning, "there is no provision in the assessment statutes which establishes that classification is to be denied based upon an allegation of ordinance violation by a taxpayer."

On appeal, the Assessor appears to have abandoned any claim that the zoning of the Property is relevant to our inquiry, and acknowledges that as of 2010, the zoning ordinances applicable to the Property permit an agriculture use even though the Property is commercially zoned.

simply not permitted to read unwritten requirements into statutes whose language is clear and unambiguous. *Id.* Because the STC found that the Property is primarily devoted to the raising and harvesting of hay, an agricultural crop, we cannot conclude, as a matter of law, that this use falls outside the ambit of the plain and clear language of section 137.016.1(2) or of section 137.017.1.

The Assessor argues that prior decisions of the STC are inconsistent with the STC's determination that the Property's use is devoted primarily to the raising and harvesting of crops. We disagree. First, we note that prior decisions of the STC are not binding or controlling on this Court. More to the point, the STC decisions cited by the Assessor are neither compelling nor persuasive. The decisions simply serve to highlight that determining whether the use of property is agricultural, and whether property is devoted primarily to the raising and harvesting of crops is a fact driven inquiry dependent, therefore, on the evidence presented. The decisions do not hold or suggest that "bright line" objective criteria can serve to automatically qualify, or disqualify, agriculturally classified property from productive capability valuation.

The Assessor also argues that other states' legislative schemes impose specific statutory requirements before a use can qualify as agricultural.[18] The Assessor suggests that the STC's failure to impose similar (albeit unwritten) limitations on our legislature's definition of "agricultural" permits taxpayers like the Batemans to take advantage of a "legal loophole." This argument only highlights that objective constraints on the contours of qualifying agricultural uses must be adopted, if at all, by our legislature, and not by this Court.

We certainly do not intend this Opinion to be read to permit the conclusion that all hay baling efforts will automatically qualify as an agricultural use-the "alarm" sounded by the Assessor. Rather, the factual determination regarding whether a property's actual use is for an "agricultural purpose" such that the property is "devoted primarily to the raising and harvesting of crops" will turn on the evidence in each case. Here, based on the record as a whole, the STC did not err when it concluded that the Batemans substantially and persuasively established an agricultural use of their Property. The Assessor's "warning" about the implications of this case are better directed to the legislature, the only branch of government authorized by the Missouri Constitution to direct, by general law, when real property subclassified as agricultural can be assessed for tax purposes on its productive capability.

After a review of the whole record, we agree with the STC that the Batemans presented substantial evidence to support the STC finding that the use of the Property is for an agricultural purpose, and that the Property's classification as agricultural is appropriately a function of the statutory definition of "agricultural" set forth at section 137.016.1(2). As such, the STC correctly concluded based on that factual finding that the true value of the Property had to be determined based on its productive capability in accordance with section 137.017.1. The STC also correctly concluded that to resort to the eight factors set forth in section 137.016.5 for determining the classification of vacant, unused land based on its "immediate most suitable economic use" was inappropriate. Only when a determination as to classifica-

---

18. The Assessor claims in her brief, without reference to particular statutory citations, that Ohio, Wisconsin, Illinois, South Carolina, New York, New Jersey and California each have statutes which describe objective criteria which must be satisfied before agricultural property can qualify for productive capability valuation.

tion cannot be made under the definitions set forth in section 137.016.1 is it appropriate for the Assessor to conduct a section 137.016.5 "most suitable economic use" analysis.

Point one is denied.

### Point Relied on II

■■ For her second point, the Assessor claims that the STC's decision creates a "new subclass of vacant property" that qualifies for a lower tax assessment based on its productive capability, and thus creates a lack of uniformity inconsistent with legislative intent and constitutional mandate.

The Assessor's argument is flawed. First "vacant" property is not a constitutionally recognized subclassification of real property within which a "new subclass" could have been created by the STC's decision. Article 10, section 4(b), Missouri Constitution. Second, the Missouri Constitution expressly authorizes the legislature to define the constitutionally recognized subclassifications of real property and to adopt a mechanism whereby agricultural property can be assessed based on its productive capability instead of its fair market value. Thus, the lack of uniformity in the treatment of agricultural property depending upon how it achieves its classification is a result of constitutional authority and is legislatively controlled.

The flawed premise for the Assessor's second point is the assertion that "the legislature did not intend to grant the reduced productive capability assessment *to any vacant land, regardless of its characteristics.*" (Assessor's Brief, p. 38, emphasis added). This assertion misses the obvious point. Agricultural land is

commonly "vacant" as it is often unimproved. But before this "vacant" land can qualify for productive capability valuation, it must be in *use* for an agricultural purpose. The requirement of a particular use is, therefore, a statutorily mandated "characteristic" which permissibly differentiates between agricultural land that can be valued based on its productive capability and agricultural land which must be valued based on its fair market value. The STC's decision did not create a new subclass of vacant property. The STC simply applied sections 137.016.1(2), 137.016.5, 137.017.1, and 137.017.4 as plainly written to find that the Property is in use for an agricultural purpose (and thus is not vacant and unused), and must, therefore, be valued based on its productive capability for tax years 2009 and 2010.[19]

Point two is denied.

### Conclusion

The STC did not err in finding that the Property met the statutory requirements to be valued based on its productive capability. We reverse the judgment of the trial court which reversed the decision of the STC.

All concur.

---

19.  "[O]ur holding is unique to the facts and circumstances as they were developed through this record. Such holding shall remain binding on the parties unless the conditions on [the Property] change or abate. Just as assessments may be challenged annually, a future assessment may present a record on behalf of the [Batemans] or [the] Assessor which may necessitate a change in the tax classification of the [Property]." *Algonquin,* 220 S.W.3d at 422.