

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JOHN H. PEER, JR., R.Ph., | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | **WD77471** |
| v. | ) | |
| | ) | **OPINION FILED:** |
| | ) | **November 12, 2014** |
| MISSOURI BOARD OF PHARMACY, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Daniel R. Green, Judge**

**Before Division II:** Victor C. Howard, Presiding Judge, and
Mark D. Pfeiffer and Gary D. Witt, Judges

This is an appeal from an administrative decision. The Missouri Board of Pharmacy ("Board") entered an order of additional discipline revoking the pharmacist license of John H. Peer, Jr. ("Peer"). Peer petitioned the Circuit Court of Cole County, Missouri ("circuit court"), to review the Board's decision. The circuit court set aside the Board's order of discipline. The Board appeals. We reverse the circuit court's judgment.

## Factual and Procedural Background

Peer was licensed by the Board as a pharmacist in 1972 and became owner of Center Pharmacy in Kansas City, Missouri, in 1978. From 2002 to 2012, Peer also worked as a

pharmacist on the evening shift of the outpatient pharmacy of Children's Mercy Hospital in Kansas City, Missouri.

On July 24, 2006, Peer entered into a Settlement Agreement ("2006 Settlement Agreement") with the Board for the purpose of resolving the question of whether his license as a pharmacist would be subject to discipline. Peer waived his right to a hearing by the Administrative Hearing Commission ("AHC") regarding cause to discipline his pharmacist license and his right to a disciplinary hearing before the Board. The 2006 Settlement Agreement enumerated Peer's pharmacy violations:

1.    Failure to maintain the original prescription in the appropriate prescription file;

2.    Failure to maintain the pharmacy in a clean and sanitary condition;

3.    Failure to maintain proper files of prescriptions;

4.    Failure to keep pharmacy inventory separate from outdated supplies;

5.    Failure to keep the daily pharmacist signature log signed;

6.    Failure to keep the compounding area in a sanitary condition;

7.    Failure to properly dispose of controlled substances;

8.    Failure to properly maintain records of controlled substances;

9.    Failure to maintain a Schedule II controlled substance in a secured area;

10.   Failure to maintain separate records of controlled substances;

11.   Failure to properly maintain records when dispensing controlled substances.

Peer's pharmacist license was placed on five years' probation beginning August 26, 2006. Among the terms of discipline in the disciplinary order section of the 2006 Settlement Agreement that Peer agreed to follow during the term of his probation was that he "shall comply

2

with all provisions of Chapter 338, Chapter 195, and all applicable federal and state drug laws, rules and regulations and with all federal and state criminal laws." The disciplinary order also provided that:

> Upon the expiration of said discipline, [Peer's] license as a pharmacist in Missouri shall be fully restored if all other requirements of law have been satisfied; provided, however, that in the event the Board determines that [Peer] has violated any term or condition of this Agreement, the Board may, in its discretion, after an evidentiary hearing, vacate and set aside the discipline imposed herein and may suspend, revoke or otherwise lawfully discipline [Peer].

On March 10, 2011, the Board was notified by the Missouri Bureau of Narcotics and Dangerous Drugs ("BNDD") that Center Pharmacy had operated with an expired BNDD license. On June 3, 2011, the Board filed a complaint for violation of the 2006 Settlement Agreement's disciplinary order. After a hearing, the Board found that Peer:

> 1. Held and distributed controlled substances without a valid BNDD license;
>
> 2. Failed to use Drug Enforcement Agency Form 222 when he distributed controlled substances;
>
> 3. Failed to maintain his pharmacy in a clean and sanitary condition;
>
> 4. Improperly labeled prescriptions;
>
> 5. Violated the disciplinary terms contained in the Settlement Agreement.

On August 4, 2011, the Board issued its order of discipline ("2011 Order"), which replaced the 2006 Settlement Agreement. The 2011 Order placed Peer on probation for two years effective August 4, 2011. Among the terms and conditions governing Peer's probation were the following requirements:

> 39.    [Peer] shall comply with all provisions of Chapter 338, Chapter 195, and all applicable federal and state drug laws, rules and regulations and with all federal and state criminal laws. . . .
>
> . . . .

49.	[Peer] shall establish a continuous quality improvement program to assess dispensing errors related to his pharmacy practice and shall take appropriate action(s) to prevent recurrence. [Peer] shall document all dispensing errors for which he was responsible regardless of practice location. On a quarterly basis [Peer] shall review all errors documented since the last quarterly review and establish steps taken or to be taken to prevent recurrence of such errors. [Peer] shall document for each quarterly review which errors were reviewed and the steps taken or to be taken to prevent recurrence. All documentation required by this section shall be made immediately available to the Board of Pharmacy or its staff upon request.

The 2011 Order provided that:

52.	Should Peer violate any term or condition of this Order or any provision of Chapter 338, RSMo, the Board of Pharmacy may vacate the order of discipline imposed herein and order such further or additional discipline as the Board deems appropriate, including, but not limited to, revocation, suspension, and/or probation against the pharmacist license of Peer. No additional order shall be entered by the Board pursuant to this paragraph of this Order without notice and an opportunity for hearing before the Board of Pharmacy as a contested case in accordance with the provisions of Chapter 536, RSMo.

After the 2011 Order became effective, Peer employed Wilson Winch, R.Ph., as a consultant at Center Pharmacy. On or about October 13, 2011, March 5, 2012, and September 5, 2012, Winch conducted Pharmacy Consultant Reviews, which were provided to the Board. Board Inspector Andi Miller inspected Center Pharmacy on several occasions and visited the Children's Mercy Hospital Outpatient Pharmacy. Based on errors identified by Winch and Inspector Miller, on January 31, 2013, the Board filed a complaint, alleging that Peer violated the terms of the 2011 Order. Regarding paragraph 39 of the 2011 Order, the Board alleged that Peer violated section 338.059.1(4) by dispensing improperly labeled prescriptions and 20 CSR 2220-2.010(1)(F) by failing to maintain his pharmacy in a clean and sanitary manner. Pertaining to paragraph 49 of the 2011 Order, the Board alleged that Peer failed to immediately produce quarterly review of errors reports, and in the reports he did produce, he did not include the steps taken to prevent recurrence of errors.

4

After two continuances *requested by Peer*, a violation of disciplinary order hearing was held on July 17, 2013. At the hearing, *Peer stipulated to a briefing schedule* in which the Board would file its brief by August 2, 2013, and Peer would file a response by August 12, 2013. On September 30, 2013, the Board issued its findings of fact, conclusions of law, and order of discipline ("2013 Order"). The Board found that Peer violated the terms of probation as alleged. The Board revoked Peer's pharmacist license and prohibited him from reapplying for seven years.

Peer petitioned the circuit court for judicial review of the Board's 2013 Order. The circuit court entered its judgment on March 11, 2014. The circuit court found that, "[P]ursuant to the Order of Discipline of August [4], 2011, Peer's probationary period expired on August [4], 2013, and the Board lost jurisdiction and authority to impose additional discipline as of that date." The circuit court thus concluded that the Board's 2013 Order was null and void.

The Board appeals.[1]

## Standard of Review

Our standard of review is controlled by section 536.100,[2] which authorizes judicial review of "a final decision in a contested case . . . as provided in sections 536.100 to 536.140, unless some other provision for judicial review is provided by statute." Thus, we review the Board's Order and not the judgment of the circuit court. § 536.140.5.

This court determines whether the Board's action: (1) violates constitutional provisions; (2) exceeds its statutory authority or jurisdiction; (3) is unsupported by competent and substantial evidence upon the whole record; (4) is, for any other reason, unauthorized by law; (5) is made upon unlawful procedure or without a fair trial; (6) is arbitrary, capricious or unreasonable; (7)

---

[1] Although Board filed this appeal as the party aggrieved by the circuit court's decision, Peer filed the appellant's brief under Rule 84.05(e) because he was aggrieved by the Board's decision.

[2] All statutory references are to the Revised Statutes of Missouri 2000, as supplemented.

5

involves an abuse of discretion. § 536.140.2. "The Board's decision is presumed valid, and the burden is on the party attacking it to overcome that presumption." *Moore v. Mo. Dental Bd.*, 311 S.W.3d 298, 303 (Mo. App. W.D. 2010) (internal quotation omitted). We make a "'single determination whether, considering the whole record, there is sufficient competent and substantial evidence to support'" the agency's decision. *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009) (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)). If the "agency's decision involves a question of law, the court reviews the question *de novo*." *Id.*

## Analysis

Peer raises four points on appeal. In his first two points, he asserts that the Board lacked jurisdiction[3] to impose additional discipline on his pharmacist license: first, because his probationary period had terminated before the Board entered its further discipline; and second, because the 2011 Order imposing additional discipline was not a qualified order under section 338.055.3. In his third point, Peer contends that the Board's order of additional discipline was unsupported by competent and substantial evidence on the whole record, and the Board's decision was arbitrary, capricious, and unreasonable. In his fourth point, Peer asserts that the Board's imposition of disproportionate discipline was arbitrary, capricious, an abuse of discretion, and violated his constitutional rights to substantive due process and equal protection.

---

[3] In Peer's brief, he conflates the concepts of jurisdiction and authority. "In a non-administrative context, jurisdiction and authority are two separate and distinct inquiries." *Roth v. J.J. Brouk & Co.*, 356 S.W.3d 786, 788 n.2 (Mo. App. E.D. 2011) (citing *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249 (Mo. banc 2009)). "A circuit court's subject matter jurisdiction over civil and criminal cases stems from the Missouri Constitution, article V, sec. 14, while a court's authority to grant relief in a particular case will lie in a specific statute or at common law." *Id.* (*citing McCracken v. Wal-Mart Stores East, L.P.*, 298 S.W.3d 473 (Mo. banc 2009)). If *Webb* does not apply to administrative cases, then the Board will have subject matter jurisdiction as long as it has been given statutory authority for a particular act or remedy. *Id.* If *Webb* does apply, the issue is whether the Board possessed authority to take the specific action challenged here; namely enter its order imposing additional discipline on Peer's pharmacist license after his probationary period had expired. *See id.*

6

**Point I**

In Peer's first point, he argues that the Board lost jurisdiction over his prior discipline when his probation ended. He contends that the Board's authority to impose additional discipline is predicated on the existence of discipline still in force. According to Peer, because the Board's 2011 Order and Peer's probation terminated on August 4, 2013, the Board lacked jurisdiction to impose additional discipline in its 2013 Order entered on September 30, 2013.

Thus, the issue we must resolve is whether the Board was required to: file its complaint; hold a violation of discipline hearing; and issue its findings of fact, conclusions of law, and order of discipline for an alleged violation of the terms of probation before Peer's probationary period expired.

"[A]dministrative agencies—legislative creations—possess only those powers expressly conferred or necessarily implied by statute." *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharmacy*, 208 S.W.3d 907, 913 (Mo. banc 2006) (internal quotation omitted). The general statutory provisions covering Occupations and Professions give the Board[4] the specific statutory authority to hear and determine whether additional discipline should be imposed when the licensee is already subject to discipline:

> Any board, commission, or committee within the division of professional registration may impose additional discipline when it finds after hearing that a licensee, registrant, or permittee has violated any disciplinary terms previously imposed or agreed to pursuant to settlement. The board, commission, or committee may impose as additional discipline any discipline it would be authorized to impose in an initial disciplinary hearing.

§ 324.042. In addition, the statutes covering pharmacists specifically give the Board the authority to impose additional discipline on a licensee who violates previously imposed disciplinary terms:

---

[4] The Board is statutorily assigned to the division of professional registration. § 324.001.11(1).

7

The [B]oard may impose additional discipline on a licensee, registrant, or permittee found to have violated any disciplinary terms previously imposed under this section or by agreement. The additional discipline may include, singly or in combination, censure, placing the licensee, registrant, or permittee named in the complaint on additional probation on such terms and conditions as the [B]oard deems appropriate, which additional probation shall not exceed five years, or suspension for a period not to exceed three years, or revocation of the license, certificate, or permit.

§ 338.055.3.

Peer relies on *Cohen v. Missouri Board of Pharmacy*, 967 S.W.2d 243 (Mo. App. W.D. 1998), to argue that section 338.055 is the exclusive statutory authority authorizing the Board to take disciplinary action against a pharmacist's license. What Peer ignores is that the *Cohen* court was interpreting an earlier—and now outdated—1994 version of that statute. Section 338.055.3 was amended in 1998 to specifically authorize the Board to impose *additional* discipline on a licensee found to have violated previously imposed disciplinary terms. And section 324.042 was enacted in 2008, ten years after the *Cohen* decision. Accordingly, Peer's reliance upon *Cohen* is misplaced.

"[S]tatutory provisions relating to the same subject matter are considered *in pari materia* and are to be construed together." *Crawford v. Div. of Emp't Sec.*, 376 S.W.3d 658, 664 (Mo. banc 2012) (emphasis added) (internal quotation omitted). In doing so, we attempt to read the statutes consistently and harmoniously. *Id.* Both section 324.042 and section 338.055.3 authorize the Board to impose additional discipline on a licensee who violates previously imposed disciplinary terms.

The legislature has imposed on the Board a statutory time limitation to bring a disciplinary action. A disciplinary proceeding against a licensee must be commenced within three years of the date upon which the licensing agency received notice of an alleged violation:

> 1. Except as provided in this section, no disciplinary proceeding against any person or entity licensed, registered, or certified to practice a profession within the division of professional registration shall be initiated unless such action is commenced within three years of the date upon which the licensing, registering, or certifying agency received notice of an alleged violation of an applicable statute or regulation.

§ 324.043.1. Such an action is commenced "when a complaint is filed by the agency's legal counsel with the agency in respect to . . . a probation violation." § 324.043.3. Here, the Board filed its complaint against Peer's license in January 2013, well in advance of the three-year deadline for receiving notice of an alleged violation and well in advance of the August 2013 probation expiration date from the 2011 Order.

The legislature likewise could have imposed a statutory time limitation upon which an entry of an order of additional discipline must occur after the commencement of the complaint, but it did not do so. "[T]he purpose behind licensing statutes is to protect the public . . . ." *Garozzo v. Mo. Dep't of Ins.*, 389 S.W.3d 660, 665 (Mo. banc 2013) (internal quotation omitted). That purpose would be thwarted were we to accept Peer's argument that, essentially, licensed practitioners on probation are free to violate the terms of their probation as long as the Board is unable to consummate a disciplinary order before the probation term ends—even where, as here, Peer actually *stipulated* to a briefing schedule that he knew would *not* result in complete briefing by the parties until *after* the purported probationary expiration date under the disciplinary order in dispute.

A contested case against a licensee for a violation of probation is commenced by the Board filing a complaint stating the relief sought or proposed and the reason for granting it. § 536.063. The Board must then promptly notify all necessary parties of institution of the complaint. § 536.067(1). The Board must also provide at least ten days notice of the time and place of the hearing. § 536.067(3), (4). At or after the hearing, the parties may present oral

arguments or file written briefs, which the Board must consider in addition to the record before rendering a final decision. § 536.080. The Board's final, written decision must be accompanied by findings of fact and conclusions of law. § 536.090. As this case demonstrates, it is neither uncommon nor unreasonable for this schedule of administrative events—events designed to safeguard the rights of a licensee such as Peer—to take up to 8 months or more to complete. To propose that the statutory procedures in a contested administrative case must be concluded before the expiration of the licensee's probationary period is absurd.

Accordingly, we conclude that under the plain meaning of the statutory framework at issue, if a licensee violates any condition of probation during the probationary period, the Board's filing of a complaint within the section 324.043.1 time constraints authorizes the Board to impose additional discipline based on the violation of the conditions of probation.

Point I is denied.

**Point II**

In Peer's second point, he asserts that the Board lacked jurisdiction to directly impose additional discipline based on an alleged violation of a previously imposed order of additional discipline. Peer argues that the Board was required to file a complaint with the AHC for a determination that grounds for discipline existed.

Generally, an administrative proceeding to discipline a pharmacy license is bifurcated. If the Board concludes that the holder of a pharmacy license has committed an act or is engaging in a practice constituting grounds for disciplinary action as provided in section 338.055.2(1)-(17), the Board may file a complaint with the AHC. *See* § 621.045.1. After the filing of such complaint, if the AHC finds that the grounds for disciplinary action are met, a second hearing is held by the Board to decide what discipline—including censure, probation on such terms and

10

conditions as the Board deems appropriate for a period not to exceed five years, suspension for a period not to exceed three years, or revocation of the license—should be imposed on the licensee. § 338.055.3.

However, disputes between the Board and its licensees may be informally resolved. §§ 621.045.4, 536.060 ("Contested cases and other matters involving licensees and licensing agencies described in section 621.045 may be informally resolved by consent agreement or agreed settlement or may be resolved by stipulation, consent order, or default, or by agreed settlement where such settlement is permitted by law."). Here, Peer waived the right to a hearing before the AHC regarding cause to discipline Peer's pharmacy license, waived the right to a disciplinary hearing before the Board, and entered into the 2006 Settlement Agreement for the purpose of resolving the question of whether Peer's license as a pharmacist would be subject to discipline.

Section 324.042 authorizes the Board to impose additional discipline when a licensee violates any disciplinary terms previously imposed. Having found that Peer violated the disciplinary terms previously agreed to in the 2006 Settlement Agreement, the Board imposed additional discipline in the 2011 Order. And after the Board found that Peer violated the disciplinary terms previously imposed in the 2011 Order, the Board imposed additional discipline in its 2013 Order, revoking Peer's pharmacist license and prohibiting him from reapplying for seven years. The Board's action in pursuing a violation of the terms of probation imposed because of a violation of a previously imposed probation is within the parameters of

section 338.055.3, is separately authorized and contemplated by sections 324.042 and 324.043.3,[5] and is consistent with the waiver of rights originally executed by Peer in 2006.

Point II is denied.

## Point III

In Peer's third point, he challenges the sufficiency of the evidence to support the Board's finding that he violated the terms of probation imposed in the 2011 Order. He contends that he complied with the requirements regarding a continuous quality improvement program and did not violate state law and regulations relating to dispensing drugs or maintaining his pharmacy in a sanitary and clean condition. In reviewing the Board's decision, we must determine whether, considering the whole record, there is sufficient competent and substantial evidence to support the Board's finding. *Albanna*, 293 S.W.3d at 428. "This standard would not be met in the rare case when the [agency's decision] is contrary to the overwhelming weight of the evidence." *Id.* (internal quotation omitted).

Paragraph 49 of the 2011 Order required that Peer maintain a quarterly review of errors, including steps taken to prevent recurrence, and that he produce the quarterly reports immediately upon the Board's or its staff's request:

> 49.     [Peer] shall establish a continuous quality improvement program to assess dispensing errors related to his pharmacy practice and shall take appropriate action(s) to prevent recurrence. [Peer] shall document all dispensing errors for which he was responsible regardless of practice location. On a quarterly basis [Peer] shall review all errors documented since the last quarterly review and establish steps taken or to be taken to prevent recurrence of such errors. [Peer] shall document for each quarterly review which errors were reviewed and the steps taken or to be taken to prevent recurrence. All documentation required by this section shall be made immediately available to the Board of Pharmacy or its staff upon request.

---

[5]  Section 324.043.3 dictates that an action is commenced upon the filing of a complaint with the AHC, "or when a complaint is filed by the agency's legal counsel *with the agency* in respect to an automatic revocation *or a probation violation*." (Emphasis added.)

12

In its 2013 complaint, the Board noted that Peer was required to maintain a quarterly review of errors pursuant to the disciplinary agreement in the 2011 Order. The Board alleged that Peer was unable to produce the quarterly review for July 1, 2012, through September 30, 2012, when requested to do so by Inspector Miller during her investigation. At the July 17, 2013 disciplinary hearing, Inspector Miller testified that, as part of Peer's 2011 Order, he was required to provide quarterly reports to the Board in which he reviewed all of his errors and established steps taken or to be taken to prevent reccurrence of the errors. Inspector Miller stated that she was provided reports labeled quarterly, but they did not include the required data. When she conducted an inspection of the pharmacy on June 5, 2012, she specifically asked Peer to provide a copy of his error records. Peer provided her with an empty binder and told her that there had not been any errors since the last inspection. Inspector Miller determined that Peer's statement was untrue because Miller had error records from Winch. Inspector Miller testified that Peer agreed that there were errors. Peer admitted that the error records were not immediately available to Inspector Miller when she requested them during her June 2012 visit and that he gave her an empty three-ring binder when she asked for a copy of his error records.

The Board further alleged that in the quarterly reports that Peer did produce, he did not include the steps taken to prevent recurrence of the errors. At the July 17, 2013 disciplinary hearing, Peer admitted that when Inspector Miller visited the pharmacy on October 16, 2012, she requested Peer's quarterly review for the quarter ending September 30, and he was unable to produce it because he had not written it yet. When Peer was asked if he documented the steps to be taken to prevent recurrence of errors listed on the quarterly review for the first quarter of 2012, Peer reacted "put out" by the documentation requirement and testified that "[t]he steps are checking and rechecking. . . . If you do a complete and final check, you're there."

13

Unfortunately, as further evidence would demonstrate, Peer failed his simplified "check and recheck" policy on numerous occasions leading to pharmaceutical errors in patient medication disbursements.

Paragraph 39 of the 2011 Order required that Peer comply with laws and regulations:

39.     [Peer] shall comply with all provisions of Chapter 338, Chapter 195, and all applicable federal and state drug laws, rules and regulations and with all federal and state criminal laws. "State" here includes the State of Missouri and all other states and territories of the United States.

The Board alleged that Peer violated section 338.059.1(1)-(7), which requires that each prescription dispensed be properly labeled:

1. It shall be the duty of a licensed pharmacist or a physician to affix or have affixed by someone under the pharmacist's or physician's supervision a label to each and every container provided to a consumer in which is placed any prescription drug upon which is typed or written the following information:

(1) The date the prescription is filled;

(2) The sequential number;

(3) The patient's name;

(4) The prescriber's directions for usage;

(5) The prescriber's name;

(6) The name and address of the pharmacy;

(7) The exact name and dosage of the drug dispensed[.]

The Board found that Inspector Miller reviewed the prescription records of Center Pharmacy, the compliance log maintained by Peer, and the Pharmacy Compliance Logs maintained by Winch and determined that seven dispensing and/or labeling errors had occurred at Center Pharmacy. Inspector Miller uncovered an additional eleven prescription and labeling errors during her review of pharmacy errors attributable to Peer at Children's Mercy Hospital.  The Board

14

concluded that by incorrectly stating the prescribing physician's directions for usage on at least six labels of the prescriptions provided to patients of both pharmacies, Peer dispensed improperly labeled prescriptions in violation of section 338.059.1(4). The Board further concluded that Peer was responsible for all incorrectly filled, compounded, and dispensed prescriptions, eleven of which were received by patients without correction.

Sufficient evidence supports the Board's determination. Inspector Miller testified as to the eighteen errors recorded in her November 26, 2012 Investigation Report that Peer made at Center Pharmacy and at Children's Mercy Hospital Pharmacy.

At Center Pharmacy:

four prescriptions were dispensed with the wrong directions – the direction printed on the label affixed to the patient's prescription bottle did not match what was on the original prescription;

one prescription was dispensed with the wrong strength – the prescriber prescribed one strength but a different strength was dispensed to the patient;

one prescription was dispensed with a wrong drug formulation – immediate release instead of extended release;

one prescription was dispensed under the wrong prescriber's name – prescription shows that it was prescribed by a physician other than the actual prescriber.

All seven of the Center Pharmacy errors reached the patient. Peer attributed three of the errors to the use of computer shortcuts but was uncertain as to how four of the errors occurred. Peer admitted that multiple prescriptions left his pharmacy that were labeled incorrectly, had the wrong physician, the wrong strength, the wrong drug formulation. He agreed that as part of his 2011 Order, he was required to comply with the provisions of Chapter 338 of the Missouri Revised Statutes, and by dispensing products from the pharmacy that were improperly labeled, he was in violation of Missouri statutes.

Eleven errors were identified at Children's Mercy Hospital Pharmacy:

four prescriptions were dispensed for the wrong drug, three of which were compounded products;

three prescriptions were dispensed for the wrong strength;

one prescription was dispensed with the wrong directions;

one prescription was dispensed with the wrong quantity;

one was dispensed with the correctly compounded drug, but the prescription label indicated the incorrect drug;

one error was reported as drug miscopied on a manual rewrite of an old prescription.

Five of the eleven errors were attributed to "no double check performed by the pharmacist." Only four of the prescription errors were known to have reached patients, none of whom reported any direct harm. Peer explained that his performance at the hospital pharmacy "was very much affected by sleep deprivation in the last two or three years. Personally[,] I wouldn't vouch for anything I did in the last ten years while I was at Children's." He summarized his "whole work performance at Children's Mercy [as] a slow, continual gradual decline in job performance."

In addition, Peer admitted at the disciplinary hearing that he operated for a week without a BNDD license. He also admitted that he had not been complying with the 2011 Order, but he argued that "there are reasons for not being compliant." Peer stated that the Board's purpose "is to protect the public health more than anything else. . . . I feel that the Board's decision to surrender my license at that time under those circumstances was the correct decision. I agree with you and I commend you as a Board and as . . . individuals, but I'm out of that situation [presumably the Children's Mercy Hospital employment "situation"]. So that's the difference."

16

Also relating to paragraph 39 of the 2011 Order, the Board alleged that Peer violated section 20 CSR 2220-2.010(1)(F), which requires that a pharmacy be maintained in a clean and sanitary manner:

> (F) All pharmacies shall be maintained in a clean and sanitary condition at all times. Any procedures used in the dispensing, compounding and admixture of drugs or drug-related devices must be completed under clean and, when recommended, aseptic conditions.
>
> 1. Appropriate sewage disposal and a hot and cold water supply within the pharmacy must be available.
>
> 2. Appropriate housekeeping and sanitation of all areas where drugs are stored or dispensed must be maintained.

In the 2013 Order's factual findings, the Board noted that both of the prior disciplinary actions taken against Peer's license included violations for his failure to maintain his pharmacy in a clean and sanitary manner.

At the July 17, 2013 disciplinary hearing, Inspector Miller testified that during her inspections of the pharmacy since the 2011 Order, she observed "[g]enerally there are papers in disarray on the countertop. There [are] usually items piled on the floor. The cleanliness does vary from time to time. Usually when I arrive[,] Mr. Peer starts straightening up." Winch noted in his October 13, 2011 initial review report that "[t]he pharmacy floor needs cleaning" and listed "general cleanliness and orderliness" as a corrective action for Peer to take. Peer testified that the pharmacy is in a grocery store and dust is generated when the floors are buffed each night. During questioning by Board members, Peer admitted that dust is also on the shelves and prescription bottles in the pharmacy, and that he dusts about every month and a half.

Because there was substantial evidence that Peer violated Chapter 338, and applicable federal and state drug laws, rules, and regulations, section 338.055 allows the Board to discipline Peer's license for, among other causes, "[v]iolation of any professional trust or confidence."

17

Considering the whole record, there is sufficient competent and substantial evidence to support the Board's finding that Peer violated the terms of probation imposed in the 2011 Order.

Point III is denied.

**Point IV**

In Peer's fourth point, he claims that the Board's imposition of discipline was disproportionate, arbitrary, capricious, an abuse of discretion, and violated his constitutional rights to substantive due process and equal protection of the laws. We note:

> The court on appeal rarely interferes with sanctions imposed by an administrative [board] which are within the statutory authority of the [board]. A part of the expertise of the members of the [Board] consists of the ability, drawn from their knowledge of the industry practices and standards, to assess the gravity of the licensee's infractions, and to fit the sanction to the offense.

*Kerwin v. Mo. Dental Bd.*, 375 S.W.3d 219, 231-32 (Mo. App. W.D. 2012) (quoting *Andrews v. Mo. Real Estate Comm'n*, 849 S.W.2d 241, 245 (Mo. App. W.D.1993)).

The severity of additional discipline to be imposed rests in the discretion of the Board. § 338.055.3. The Board's decision as to discipline will be "upheld unless its determination is: unsupported by competent and substantial evidence; arbitrary, capricious or unreasonable; an abuse of discretion; or unauthorized by the law." *KV Pharm. Co. v. Mo. State Bd. of Pharmacy*, 43 S.W.3d 306, 310 (Mo. banc 2001). "Discretion is abused when the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Kerwin*, 375 S.W.3d at 232 (internal quotation omitted).

Peer voluntarily took the second job at Children's Mercy Hospital for supplemental income. He did not identify tiredness from *self-induced* sleep deprivation as a contributing factor to errors in quarterly error reviews and only belatedly offered that excuse at his

18

disciplinary hearing. Yet Peer admitted at his disciplinary hearing that the quality of his performance at the hospital pharmacy "was very much affected by sleep deprivation in the last two or three years. Personally[,] I wouldn't vouch for anything I did in the last ten years while I was at Children's." He summarized his "whole work performance at Children's Mercy [as] a slow, continual gradual decline in job performance."

Peer contends that his actions did not rise to the level of malpractice or incompetence. He argues that license revocation was unwarranted because he produced evidence that his errors were related to the effects of sleep deprivation. Dr. Scott Eveloff, a physician who is board certified in sleep disorder medicine and pulmonary medicine, testified on Peer's behalf. Dr. Eveloff testified that Peer suffered from chronic sleep deprivation from 2011 to the end of 2012 when he was working until 11:00 p.m. at Children's Mercy Hospital, going to bed at midnight, and waking at 6:30 a.m. However, the doctor could not say with medical certainty that Peer's *self-induced* sleep deprivation was unequivocally the only cause of his lack of attention. When Dr. Eveloff was asked how confident he would be in his child's safety if his child were at Children's Mercy Hospital, he replied: "So you mean knowing that [Peer] was sleep [deprived] or that he has committed all these errors, how would I like him handling my child's prescriptions? It would give me pause." Peer's belated attempt to blame his dispensing errors on his lack of sleep neither mitigates those errors nor lessens the danger he posed to the public.

Section 324.042 authorizes the Board to impose as additional discipline "any discipline it would be authorized to impose in an initial disciplinary hearing." There is a wide range of sanctions available to the Board under section 338.055.3, from censure to revocation of license. Section 338.055.3 provides that:

> The board may impose additional discipline on a licensee, registrant, or permittee found to have violated any disciplinary terms previously imposed under this

19

section or by agreement. The additional discipline may include, singly or in combination, censure, placing the licensee, registrant, or permittee named in the complaint on additional probation on such terms and conditions as the board deems appropriate, which additional probation shall not exceed five years, or suspension for a period not to exceed three years, or revocation of the license, certificate, or permit.

"The appropriate sanction within that range is confided to the discretion of the Board." *Holmes v. Mo. Dental Bd.*, 703 S.W.2d 11, 13 (Mo. App. W.D. 1985). The Board had the authority to revoke Peer's license as additional discipline for violating previously imposed disciplinary terms.

Peer asserts that he has been treated differently and more harshly than other pharmacists who have been disciplined under section 338.055.2[6] and that there is no rational basis for the difference in discipline. "However, when the treatment at issue does not involve a fundamental right or a suspect classification, it survives an equal protection challenge so long as it bears a rational relationship to a legitimate government interest." *Artman v. State Bd. of Registration for Healing Arts*, 918 S.W.2d 247, 252 (Mo. banc 1996). Likewise, "[s]ubstantive due process requires the state action which deprives one of life, liberty or property, be rationally related to a legitimate state interest." *Lane v. State Comm. of Psychologists*, 954 S.W.2d 23, 24 (Mo. App. E.D. 1997). "To assert a substantive due process claim[,] one must establish that the government action complained of is 'truly irrational,' more than arbitrary, capricious, or in violation of state law." *Id.* at 24-25. While Peer has a property interest in his pharmacy license, the Board has a vital interest in protecting the public.

"The reason professional license discipline laws exist is to protect the public served by those who have been granted such licenses." *Johnson v. Mo. Bd. of Nursing Adm'rs*, 130 S.W.3d

---

[6] Peer cites to disciplinary action against pharmacists listed in Board newsletters from February 2012 to May 2013. Of the three cases in the newsletters involving violation of discipline, the Board placed one pharmacist on two years' probation; revoked one pharmacist's license and prohibited her from reapplying for seven years; and one pharmacist voluntarily surrendered his license and cannot reapply for three years. None of these examples appear identical to the numerous opportunities Peer was given to rectify pharmaceutical concerns in the 2006 Settlement Agreement and 2011 Order. Nor do they illustrate that Peer is somehow being singled out for retributive and inconsistent discipline.

619, 645 (Mo. App. W.D. 2004). "[T]he focus of licensing laws, and suspension or revocation provisions included therein, is on protection of the public served by such licensed professionals. Cases uniformly reflect this focus with respect to the disciplining of various occupational licenses." *Id.* (internal quotation omitted).

There is a rational basis for the Board's revocation of Peer's license due to Peer's egregious conduct. Peer entered into the 2006 Settlement Agreement for five years' probation due to pharmacy violations. Due to Peer's violation of the 2006 Settlement Agreement's disciplinary order, the Board issued its 2011 Order, which placed Peer on probation for two years. In 2013, the Board filed a complaint, alleging that Peer violated the terms of the 2011 Order. After finding that Peer violated the terms of probation, the Board issued its 2013 Order, revoking Peer's pharmacist license and prohibited him from reapplying for seven years. The state has a legitimate interest in protecting its citizens from pharmacists who persist in violating discipline and who fail to correct cited errors. Revoking the license of the offending pharmacist is rationally related to that interest. The Board's treatment of Peer did not violate the Equal Protection or Due Process Clauses of the United States Constitution or article I, sections 2 or 10 of the Missouri Constitution.

Under the factual circumstances of Peer's case, the Board's decision to revoke his pharmacy license is within the statutory range of discipline available to the Board, and such discipline is not arbitrary, capricious, or disproportionate. Likewise, Peer's constitutional rights have not been violated, and the Board's decision does not constitute an abuse of discretion.

Point IV is denied.

**Conclusion**

The judgment of the circuit court is reversed, and the case is remanded to the circuit court with directions to reinstate the Board's 2013 Order revoking Peer's license as a pharmacist.

_____
Mark D. Pfeiffer, Judge

Victor C. Howard, Presiding Judge, and
Gary D. Witt, Judge, concur.

22