Donald Dustin CURTIS, Appellant,

v.

MISSOURI BOARD FOR ARCHITECTS, PROFESSIONAL ENGINEERS, PROFESSIONAL LAND SURVEYORS AND PROFESSIONAL LANDSCAPE ARCHITECTS, Respondent.

WD 80174

Missouri Court of Appeals,
Western District.

OPINION FILED: May 23, 2017

David Barrett, Jefferson City, MO, Counsel for Appellant.

Edwin Frownfelter, Lees Summit, MO, Counsel for Respondent.

Before Division Two: Thomas H. Newton, P.J., James Edward Welsh, and Karen King Mitchell, JJ.

Thomas H. Newton, Presiding Judge

Mr. Donald Dustin Curtis appeals a Cole County circuit court judgment affirming the disciplinary order issued by the Missouri Board of Architects, Professional Engineers, Professional Land Surveyors, and Professional Landscape Architects placing his professional license on probation for three years for violations of a previous probation order. Mr. Curtis challenges the Board's disciplinary order on grounds of insufficient evidence, unlawful procedure, and agency action in excess of statutory authority. We affirm.

Mr. Curtis, an Arizona-based architect, is licensed in Missouri and a number of other jurisdictions. His license was placed on probation for one year, beginning in June 2014, because he had failed to inform the Board when renewing his license that he had been subject to discipline in Nevada. As part of that probation, he was required to submit plans for his Missouri projects to the Board, as requested, for review. Two of those projects are subject to this dispute. One, the Florissant project, involved plans for the renovation of a freestanding Burger King restaurant; the other, the Bridgeton project, involved the construction of a Burger King restaurant inside an existing Walmart store. Mr. Curtis prepared the plans for the Florissant project, including plumbing and lighting changes, without using the services of a licensed mechanical or electrical engineer. The Bridgeton project did not comply with Missouri's title-block regulations because the plans, although sealed by a professional engineer, failed to include his contact information.[1]

The Board filed a probation-violation complaint in December 2014 and issued its notice of probation violation and hearing to Mr. Curtis in February 2015. Following the hearing, the Board issued its findings of fact, conclusions of law, and disciplinary order. The Board concluded that Mr. Curtis had violated the terms of the June 2014 disciplinary order

by placing seals on projects that did not comply with Board regulations, by completing an architectural project that in-

1. Further details about the projects appear in the legal analysis below.

cluded professional engineering that was beyond his education, skill, and training as an architect, failed to do adequate calculations to determine the propriety of his design, and included title blocks that did not conform to Board regulations, but nevertheless placed his signature and seal on those projects despite these shortcomings.

The Board placed his license on a three-year probation beginning June 2, 2015, with certain conditions, which are similar to those imposed in June 2014. The Board also included in the order a proviso that could extend the probationary period as follows:

> If at any time during the probationary period Curtis ceases to provide architectural services in the State of Missouri for longer than three months at a time, ceases to be currently licensed under the provisions of Chapter 327, RSMo, or fails to keep the Board advised of his current place of business and residence, the time of his inactivity, or unlicensed status, or unknown whereabouts shall not be deemed or taken as any part of the time of discipline so imposed.

The Cole County circuit court found no grounds for relief under section 536.140 and denied Mr. Curtis's petition for judicial review, lifted a stay of the Board's disciplinary order, and reinstated it as of October 4, 2016.[2] This timely appeal followed.

## Legal Analysis

■ We review the Board's order and not the circuit court's judgment, and, under section 536.140, we determine whether its action:

(1) violates constitutional provisions; (2) exceeds its statutory authority or jurisdiction; (3) is unsupported by competent and substantial evidence upon the whole record; (4) is, for any other reason, unauthorized by law; (5) is made upon unlawful procedure or without a fair trial; (6) is arbitrary, capricious or unreasonable; (7) involves an abuse of discretion. § 436.140.2. "The Board's decision is presumed valid, and the burden is on the party attacking it to overcome that presumption." We make a " 'single determination whether, considering the whole record, there is sufficient competent and substantial evidence to support' " the agency's decision. If the "agency's decision involves a question of law, the court reviews the question de novo."

*Peer v. Mo. Bd. of Pharmacy*, 453 S.W.3d 798, 802-03 (Mo. App. W.D. 2014) (citations omitted).[3] *See also Albanna v. State Bd. of Registration for the Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009) (setting forth constitutional standard for review of administrative decisions—art. V, § 18—as "whether considering the whole record, there is sufficient competent and substantial evidence to support the [agency's decision]. This standard would not be met in the rare case when the [agency's decision] is contrary to the overwhelming weight of the evidence.") (citations omitted).

■ Mr. Curtis raises two points based on the sufficiency of the evidence: (1) whether he practiced professional engineering without a license and (2) whether he could be sanctioned for the titling violations of another individual. As to the latter point, he also argues that the Board's ac-

---

2. Statutory references are to RSMo 2000 (as updated through noncumulative supplement 2014), unless otherwise indicated.

3. In our mandate, however, we reverse, affirm, or otherwise act on the circuit court's judgment. *Jefferson City Apothecary, LLC v. Mo. Bd. of Pharmacy*, 499 S.W.3d 321, 324 n.1 (Mo. App. W.D. 2016).

tion was arbitrary, capricious, or unreasonable. The key to deciding Mr. Curtis's first point is whether the engineering service he provided on the Florissant project was "incidental practice and necessary to the completion of professional services lawfully being performed by such architect." § 327.191(4).[4] Section 327.011(9) defines "incidental practice" as follows:

[T]he performance of other professional services licensed under chapter 327 that are related to a licensee's professional service, but are secondary and substantially less in scope and magnitude when compared to the professional services usually and normally performed by the licensee practicing in their [sic] licensed profession. This incidental professional service shall be safely and competently performed by the licensee without jeopardizing the health, safety, and welfare of the public. The licensee shall be qualified by education, training, and experience as determined by the board and in sections 327.091, 327.181, 327.272, and 327.600 and applicable board rules to perform such incidental professional service.

§ 327.011(9). No case law in Missouri has yet interpreted or applied this definition, and the Board suggests that "[d]rawing the line between what is incidental and what is fundamental requires expertise and understanding of building principles, the technical requirements of the work, and the qualifications of the respective professions." According to the Board, the question of whether certain work is the "incidental practice" of engineering is "uniquely within the Board's area of qualification." While we reject its implication

that the courts have no basis for determining whether certain conduct falls within the statutory definition of "incidental practice," on the record, we believe that competent and substantial evidence supports its conclusion that Mr. Curtis exceeded "the scope of engineering incidental to architectural work" that he performed.

Mr. Curtis contends that no evidence shows that the services he provided for the Florissant project exceeded incidental work. He testified that, on a dollar basis, the plumbing and electrical work for this project did not exceed 10 percent. He also testified that he had taken coursework in mechanical, plumbing, and electrical engineering as part of his architecture studies. Mr. Curtis stated that he had learned more about mechanical, plumbing, and electrical engineering while practicing his profession during the previous twenty years and had taken some continuing education in these disciplines to enhance his utility to clients. Specifically discussing the plumbing and lighting engineering required for the Florissant project, Mr. Curtis stated that toilets and sinks were simply replaced, relocated, and reconnected for accessibility purposes; lighting was replaced to increase efficiency; and outlets were added in the dining area for customers to use their phones and computers. Based on this undisputed evidence, we believe that the engineering work in which Mr. Curtis engaged was "substantially less in scope and magnitude when compared to the professional services usually and normally performed by the licensee." And we believe that Mr. Curtis had sufficient education, training, and experience to do some

4. Chapter 327 was amended in 2014, and the amendments took effect August 28, 2014. The Board's complaint is based on sets of plans that Mr. Curtis signed and sealed August 29 and September 12, 2014. The Board pointed out to Mr. Curtis during the probation-violation hearing that the State had amended the law in 2014 to define "incidental practice." His defense had rested essentially on his own conception of incidental practice in the absence of a definition for the term in Missouri before the law was amended in 2014.

electrical and plumbing work, but we are concerned whether he safely and competently performed the work without jeopardizing health, safety, and welfare. § 327.011(9).

This concern stems from questions that licensed professionals on the Board asked Mr. Curtis about certain aspects of the lighting and plumbing. For example, when asked if he confirmed adequate uniformity throughout the space by conducting associated calculations, Mr. Curtis stated that this particular job did not require lighting uniformity calculations as part of informed engineering practice. He also testified that he was not familiar with the Illuminating Engineering Society and its standards for lighting requirements in a retail restaurant space. When asked about arc flash calculations, Mr. Curtis stated that he did not know what that meant. He also did not calculate whether the electrical service was adequately sized for the added receptacles that were to be installed. Mr. Curtis was asked whether he conducted any calculations to determine whether a previous engineer had correctly determined if the existing sewer was adequately sized for the Florissant project, "given the plumbing code and the standard of care." In Mr. Curtis's view, small projects, where no additional fixtures are added, do not require such calculations, so he did not perform them. Given such deficiencies and the Board's apparent concern, by asking such questions, that these types of calculations should either have been familiar to Mr. Curtis or that he should have conducted them in the interest of public health, safety, and welfare, we find that the evidence showed that his work exceeded the "incidental practice" as defined. This point is denied.

■ Because the Board sanctioned Mr. Curtis for deficiencies in the engineering title block of the Bridgeton project plans,

he argues in the second point that no evidence supported its conclusion that he was subject to professional discipline and that the Board's decision to sanction him for the violations of another individual was arbitrary, capricious, or unreasonable. The probation-violation complaint framed the charge as follows:

26. The title block of the engineering plan lists Asfar Hasan as engineer of record, but fails to comply with the title block requirements of 20 CSR 2030-2.050, in that it does not set forth Hasan's address and phone number, nor does it set forth the name of any engineering company with a certificate of authority to practice professional engineering in Missouri.

27. By failing to assure that required information is listed in the title block, Curtis failed to comply with 20 CSR 2030-2.050, and thereby violated Section 327.441.2(6) and term (C) of his probation, which is cause for further discipline.

28. By failing to accurately complete the title block, Curtis violated a professional trust, which is cause for discipline under Section 327.441.2(13) and term (C) of his probation.

The cited code section requires that an architectural or engineering entity include on all plans a title block containing certain information, such as name, address, and phone number. MO. CODE REGS. ANN. tit. 20, § 2030-2.050 (2014). This code section implements section 327.411, which addresses the use and effect of the licensee's personal seal in terms of responsibility for the contents of the documents required to be sealed. § 327.411.1. Section 327.441.2(6) allows the Board to charge the holder of a license with "[v]iolation of, or assisting or enabling any person to violate, any provision of this chapter, or of any lawful rule or regulation adopted pursuant to this

chapter." Section 327.441.2(13) allows a charge for "[v]iolation of any professional trust or confidence." Term (C) of the June 2014 disciplinary order required that "[d]uring the probationary period, Curtis shall comply with all provisions of Chapter 327, RSMo (as amended), all rules and regulations of the Board and all federal and state laws, rules and regulations. 'State' here includes the State of Missouri and all other states and territories of the United States."

Mr. Curtis cites *Bird v. Missouri Board of Architects, Professional Engineers, Professional Land Surveyors and Landscape Architects*, 259 S.W.3d 516 (Mo. banc 2008), to support his argument that his license cannot be disciplined for the engineer's mistakes. The Board distinguishes *Bird*, noting that the engineer who was disciplined for sealing an architect's plans was found not to have violated a code requirement of immediate personal supervision by incorporating the work of another licensee—an architect—into his own design, because he did not supervise the architect and he took personal responsibility for the entire project.

Mr. Curtis admitted that the engineer's title-block requirements on the Bridgeton project were not complied with. In this regard, he testified that his company had done fifty-four such projects in a four-month period in 2014, "and I know I missed some details here and there." He stressed, however, that "[w]hat's important is that the registrant himself that he's responsible for his own work regardless of whether he's independent or with another firm, that's kind of what I've just in general gone with over time." Mr. Curtis had previously testified that the Bridgeton project plans were based in large part on

prototypes developed by his company and engineering firms in Texas and Arizona. Because the city of Bridgeton required that an engineer seal the plans, Mr. Curtis asked Mr. Hasan, an individual registered in Missouri, to seal them. Under Board questioning, Mr. Curtis agreed that Missouri law requires, as part of an architect's role in coordinating the services of engineers and other consultants, that he ensure "that all plans are prepared in the proper way and in compliance with law," including the completion of the title blocks "for any person who was actively involved in the preparation of the plans." *See* § 327.091.1.

Under these circumstances, we agree with the Board that *Bird* does not compel us to find that Mr. Curtis could not be disciplined for failing to ensure that the engineer complied with the title-block requirements. Unlike the engineer in *Bird*, Mr. Hasan did not take responsibility for the entire project or lack any relationship to Mr. Curtis.[5] *Bird*, 259 S.W.3d at 518. As well, *Bird* involved different statutory and regulatory requirements. *Id.* at 520. Still, our supreme court opined in *Bird* that the personal-seal requirements of Chapter 327 serve the critical function of protecting the public and providing a basis for assigning legal responsibility for defective plans. *Id.* at 522-23. Mr. Curtis, who had set his seal on the Bridgeton plans as the architect and coordinated the work of others who contributed to the plans, sought an engineer to seal the plans at the city's request. By not ensuring that the engineer's title block was complete, Mr. Curtis enabled another to violate the law and breached professional confidence and trust. We do not believe that the Board's decision to hold Mr. Curtis responsible for the engi-

---

5. Mr. Curtis testified that Mr. Hasan worked with one of the engineering firms consulted to develop the prototypes on which the Bridge-

ton project was based and was familiar with the plans he sealed.

neer's shortcomings was arbitrary, capricious, or unreasonable. This point is denied.

■ In the third point, Mr. Curtis argues that the Board based its decision on unlawful procedure by finding that he was subject to professional discipline for violations not set out in the probation-violation complaint. In this regard, he focuses on Board questions about drawings in the Florissant project plan with a title block that names a Burger King store in Lincoln, Nebraska, under "Project Description." This admitted error was included among the Board's findings of fact.[6] It was not, however, among the specific acts alleged in the probation-violation complaint. The complaint focused on the unauthorized engineering work that Mr. Curtis did on the Florissant project. Any title-block irregularities were addressed in the complaint solely in the context of the Bridgeton project. Under *Duncan v. Missouri Board for Architects, Professional Engineers and Land Surveyors*, 744 S.W.2d 524, 538-39 (Mo. App. E.D. 1988), the Board's complaint must "inform the accused of the nature of the charges so that he can adequately prepare his defense." The specificity required, however, rises no higher than "setting forth the course of conduct deemed to establish the statutory ground for discipline." *Id.* at 539. Notably, the court in *Duncan* rejected

holding the Board to a "degree of specificity setting forth each specific individual act or omission comprising the course of conduct." *Id.*

■ The Board alleged that Mr. Curtis had violated the terms and conditions of the June 2014 disciplinary order by violating statutory and regulatory requirements. It based the complaint on the plans for two projects that the Board requested he submit as part of the probationary conditions to which his license was subject. Although the complaint sets forth specific individual acts relating to each project, *Duncan* does not require that the Board do so. We believe that by alleging that Mr. Curtis had violated the law and thus the terms of the disciplinary order, and specifically citing the two projects that were at issue in the complaint, the Board complied with its pleading obligations. The plans were in evidence, Mr. Curtis knew that they were under scrutiny, and he was informed that his conduct with respect to these two projects violated the terms of the June 2014 disciplinary order. Without more, he could adequately prepare his defense. Any additional individual errors or omissions not specifically set forth in the complaint could then, consistent with Mr. Curtis's due process rights, form the basis for taking disciplinary action against him. This point is denied.[7]

---

6. This finding stated,

Architectural sheets A6 and A7 on the Florissant Project plans, which are marked as Exhibits D11 and D12, list the project as one in Nebraska, even though it was for Florissant, Missouri. Curtis admitted that was an error and that his staff should have caught the error, and that he had not noticed that prior to being questioned about it.

While an error of this nature might seem innocuous, the Board had broader concerns, explaining that Mr. Curtis's "description of his process in the hearing supports a legiti-

mate concern of the Board as to the careless mass production of plans by his office." And further, "The Board had substantial reason for concern that Curtis was lending inadequate care to the Missouri projects because of his large-scale, mass production approach."

7. The Board argues that because Mr. Curtis did not raise this issue before the circuit court, he is precluded from raising it on appeal. We would remind the Board that the petition for review, like the circuit court's judgment, "is of no particular interest when the matter is appealed either to the court of appeals or to this Court." *Bird v. Mo. Bd. of*

In the fourth and final point, Mr. Curtis challenges the tolling provision that the Board included in the discipline it imposed as an act in excess of the Board's authority. He contends that the Board's statutory authority to impose probation is limited to a period not to exceed five years and that, "although the three-year order of probation is within the Board's authority, requiring his continuous practice in Missouri on pain of unlimited extension of the probationary period is not." The Board argues that because it has not yet tolled Mr. Curtis's probation due to inactivity in the state, the matter is not appealable because no record has been established.[8] Section 327.441. sets forth the disciplinary actions that the Board is authorized to take. It states, in part,

Upon a finding by the administrative hearing commission that the grounds, provided in subsection 2 of this section, for disciplinary action are met, the board may, singly or in combination, censure or place the person named in the complaint on probation on such terms and conditions as the board deems appropriate for a period not to exceed five years, or may suspend, for a period not to exceed three years, or order a civil penalty under section 327.077, or revoke the license or certificate of authority of the person named in the complaint.

§ 327.441.3.

Mr. Curtis cites *KV Pharmaceutical Co. v. Missouri State Board of Pharmacy*, 43 S.W.3d 306 (Mo. banc 2001), for the court's caution that sanctions "must not exceed the agency's statutory authority." Other than stating the standard of review, i.e., that the Board's sanction would be upheld "unless its determination is: unsupported by competent and substantial evidence; arbitrary, capricious or unreasonable; an abuse of discretion, or unauthorized by the law," this case does not give any additional support to Mr. Curtis's argument. *Id.* at 310. On the other hand, the Board contends that Mr. Curtis's failure to challenge this aspect of the disciplinary order before bringing his appeal precluded it from explaining or putting "evidence on the record as to how it has applied this language in the past or intends to do so in the future." According to the Board, it "might be able to show that this language has been used in scores of probation orders over the years, and has never been interpreted in the way Curtis suggests." It cites case law addressing whether statutory overbreadth can be decided "on the basis of frivolous and speculative invalid applications when a limiting construction can reasonably be placed on [the ordinance]." *See Caesar's Health Club v. St. Louis Cnty.*, 565 S.W.2d 783, 789 (Mo. App. 1978) (observing that prostitution ordinance's definition of sexual conduct could be construed to proscribe the normal functions of obstetricians, gynecologists, urologists, nurses, babysitters, and others, but refusing to consider alleged overbreadth claim that "is neither real nor substantial").

We agree that Mr. Curtis's challenge is premature, not least because he will have to exhaust administrative remedies as to this aspect of the Board's decision before we can consider the matter. *See State ex rel. Ideker, Inc. v. Garrett*, 471 S.W.3d 743, 747-48 (Mo. App. W.D. 2015) (stating that the exhaustion rule applies where an agency decision, as opposed to an agency rule, is implicated). The Board has the statutory

---

*Architects, Prof'l Eng'rs, Prof. Land Surveyors & Landscape Architects*, 259 S.W.3d 516, 520 (Mo. banc 2008).

8. According to the Board, "Curtis did not request the Board reconsider or clarify its order before raising his interpretation for the first time on judicial review."

authority to impose a probationary period on an architect's license "not to exceed five years." § 327.441.3. It has imposed a three-year period of probation on Mr. Curtis's license, with tolling for those times that he is inactive in Missouri. As long as his probationary period, including tolling, does not actually exceed five years, we cannot say that the Board has acted ultra vires in sanctioning him, in the absence of any evidence showing that it has done so. This point is denied.

### Conclusion

Because the Board's action was supported by sufficient and competent evidence, its decision was not arbitrary, capricious, or unreasonable, and it did not exceed its statutory authority, we affirm the circuit court's judgment.

James E. Welsh, and Karen King Mitchell, JJ. concur.