

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| KENYA WALZER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | WD87131 |
| v. | ) | |
| | ) | **OPINION FILED:** |
| | ) | **December 10, 2024** |
| MISSOURI BOARD OF NURSING, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Jon E. Beetem, Judge**

**Before Division Three:** Mark D. Pfeiffer, Presiding Judge,
Lisa White Hardwick and Thomas N. Chapman, Judges

Ms. Kenya Walzer ("Walzer") appeals from the judgment of the Circuit Court of

Cole County, Missouri ("circuit court"), which affirmed a disciplinary order of the

Missouri Board of Nursing ("the Board") revoking her nursing license. We affirm

Walzer's license revocation.

**Factual and Procedural History[1]**

Walzer has a long history and repeated pattern of nursing license discipline by the Board, receiving disciplinary probation with specific terms from the Board and then violating those terms.

Walzer was originally licensed as a licensed practical nurse ("LPN") by the Board in 2000 and later licensed as a registered nurse ("RN") in 2006. In 2012, the Administrative Hearing Commission ("AHC") found cause to discipline her license due to her possession of a controlled substance. For this misconduct, the Board placed her license on probation for three years. The probation order mandated Walzer submit to random drug testing: she was ordered to check in with National Toxicology Specialists ("NTS") on a daily basis and to provide a urine sample on the days that NTS selected her for testing.

Five months into this probation period, on August 5, 2013, the Board's General Counsel filed a probation violation complaint, which alleged Walzer did not check in with NTS on fifty-five days and failed to submit a sample as required on five days. After a hearing, the Board revoked Walzer's original probation and placed her license on a new four-year probation term, beginning on September 24, 2013.

---

[1] "In reviewing an agency's findings of fact, this Court defers to the agency's credibility determinations and the weight given to conflicting evidence. This Court will defer to an agency's factual findings so long as there is sufficient competent and substantial evidence in the record to support them and they are not contrary to the overwhelming weight of the evidence." *Ferry v. Bd. of Educ. of Jefferson City Pub. Sch. Dist.*, 641 S.W.3d 203, 206 (Mo. banc 2022) (internal citations and quotation marks omitted).

Two years into this second probation term, on October 16, 2015, the Board's General Counsel filed a probation violation complaint, which alleged Walzer did not check in with NTS on 187 days and failed to submit a sample as required on twenty-one days. After a hearing, the Board censured her license but placed her back on probation.

On July 12, 2017, the Board's General Counsel filed another probation violation complaint. After a hearing, the Board again found numerous probation violations: twenty-three failures to check in; two failures to submit a sample when required; two submissions of diluted samples, as determined by suspiciously low creatinine levels; and one positive test for four different controlled substances (lorazepam, oxycodone, marijuana, and oxymorphone) that Walzer did not have a valid prescription to use. The Board revoked Walzer's license.

On May 14, 2019, Walzer applied for an RN license by examination. The Board rejected her application, and Walzer appealed to the AHC. There, the Board argued for the AHC to either uphold the Board's rejection of Walzer's application for license by examination or, alternatively, to grant Walzer's license application subject to a five-year probation period with terms including the three relevant to this appeal, which relate to the consumption of various substances:

> Walzer shall contract with the Board's third-party administrator of drug and alcohol testing and comply with that contract;
>
> Walzer shall not use or consume any drugs not lawfully prescribed;
>
> Walzer shall not use or consume alcohol in any form.

3

Conversely, Walzer requested either that her license application be granted without any probation terms or that the AHC modify the Board's requested terms to accommodate her alleged substance abuse disorder, which Walzer argued was purportedly required by the Americans with Disabilities Act (ADA).

On August 13, 2020, the AHC granted Walzer's nursing license application but not in the form requested by Walzer; instead, the AHC's 2020 ruling was expressly contingent on Walzer passing the nursing exam and expressly subject to the probation terms requested by the Board. Further, the AHC declined Walzer's demand for ADA accommodations. Walzer did not seek judicial review of the AHC's ruling despite her prior objection to the probation terms requested by the Board and the AHC's refusal to consider her affirmative request for ADA accommodations.

Following the AHC's 2020 ruling, the Board issued an order on September 10, 2020, adopting the AHC's probated licensure to Walzer and clarifying how the probation terms would be administered.[2] The Board's probation terms relevant to this appeal

---

[2] The probation terms in the Board's order did not mirror the exact language of the AHC's ruling but were substantively similar to the relevant terms from the AHC's ruling:

> [Walzers]'s failure to comply with [Walzer]'s contract with the [third party administrator] shall constitute a violation of the terms of discipline.
> . . . .
> During the disciplinary period, [Walzer] shall abstain completely from the use or consumption of alcohol in any form, including over the counter products. The presence of any alcohol whatsoever in any biological sample obtained from [Walzer], regardless of the source, shall constitute a violation of [Walzer's] discipline.
> . . . .

outlined the procedure for Walzer's drug and alcohol testing: clarifying that a urine specimen with a creatinine level below twenty would be considered a diluted result and a presumed positive test for prohibited substances, resulting in a violation of probation; providing guidelines for avoiding a diluted result; mandating that Walzer check in with NTS between 5:00 a.m. and 4:00 p.m.; and prohibiting the consumption of several other products, including poppy seeds, non-alcoholic beer, and foreign tea.[3]

Walzer met with the Board on February 22, 2021, to go over the terms of the Board's September 10, 2020 probated license order; she signed the order on the last page and initialed every paragraph detailing how the probation terms would be administered to signify her understanding of the procedures surrounding her probation terms and of the expectations for fulfilling them.

On November 1, 2022, the Board's General Counsel filed the current probation violation complaint. The complaint identified three categories of violations: (1) two failures to timely check in with NTS; (2) four diluted test results; and (3) one positive test for alcohol.

---

During the disciplinary period, [Walzer] shall abstain completely from the personal use of possession of any controlled substance or other drug for which a prescription is required, unless use of the drug has been prescribed by a person licensed to prescribe such drug and with whom [Walzer] has a bona-fide relationship as a patient. Such prescribed drug shall only be consumed as directed and only for the condition for which it was prescribed. [Walzer] shall not ingest or consume . . . illicit drugs or street drugs.

[3] Although the reason for prohibiting these additional products is not in the record before us, the Board has explained that these products can trigger false positives for substances prohibited by the AHC's ruling.

At the subsequent probation violation hearing, the Board's General Counsel submitted the following exhibits relevant to this appeal: the AHC's ruling requiring the Board to issue Walzer's license and the Board's order issuing Walzer's license subject to the probation terms; a copy of the Board's order with Walzer's signature at the bottom and hand-written initials next to each probation term; the complete record of Walzer's drug test results since she received her current RN license in 2021, documenting her two untimely check-ins, her four diluted samples, and her positive test for alcohol; an affidavit of NTS's Medical Review Officer,[4] who contacted Walzer regarding her positive alcohol test result and determined that Walzer could not provide a medical reason or other reasonable explanation to excuse the positive test result for alcohol.

Walzer submitted two groups of exhibits: (1) a screenshot of a webpage, which showed she accessed NTS's web check-in on the day of one of her two untimely check-ins but not the time of her check-in, and (2) positive performance reviews from her supervisor. After the exhibits were admitted, Walzer declined to present any testimony through direct examination, but the Board's General Counsel cross-examined her.

During the cross-examination, Walzer asserted that her low creatinine levels in some samples were the result of a diuretic she had been prescribed and took on a daily basis; however, when pressed on why a *daily* medication would result in significant day-to-day *variance* in her creatinine levels, Walzer could not provide an explanation, and she

---

[4] Pursuant to the directive of section 509.520 (Supp. III 2023), we do not use any witness names in this opinion, other than parties to the underlying litigation. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through November 1, 2022, unless otherwise indicated.

6

provided no expert testimony or documentation to account for the variance. Walzer denied consuming any alcohol since 2015, but she could not provide any explanation for her positive test for alcohol. When Walzer recounted her conversation with the Medical Review Officer regarding her positive urine test, she claimed that he asked her to submit to a PEth test—a blood test capable of detecting any alcohol consumption from the prior four weeks. Walzer asserted that this test and another PEth test, which followed a diluted sample, came back negative. But, Walzer did not provide any documentation of either negative PEth test and, instead, relied only upon her testimony as proof of the existence of such alleged negative tests.

From this evidence, the Board concluded that Walzer's responses were not credible and found that she violated the terms of probation by: (1) consuming alcohol; (2) checking in untimely twice; and (3) submitting four diluted samples. The Board revoked Walzer's license.

Walzer requested judicial review of the Board's decision before the circuit court, arguing that the Board's 2020 probation order was unenforceable because its terms exceeded the probation conditions imposed by the AHC. The circuit court noted that *both* the AHC's 2020 ruling and the Board's 2020 order prohibited use of alcohol, that Walzer had tested positive for alcohol, and that she had a long history of violating her license's probation terms. Thus, the circuit court affirmed the Board's discretionary decision revoking Walzer's nursing license.

Walzer timely appealed, raising two points on appeal. For ease of analysis, we address these points in reverse order.

**Standard of Review**

Before reviewing an administrative action, we must determine the scope and procedure of our review by discerning whether the challenged administrative action involved a contested or uncontested case. *Johnston v. Livingston Cnty. Comm'n*, 462 S.W.3d 859, 864 (Mo. App. W.D. 2015) (citing *City of Valley Park v. Armstrong*, 273 S.W.3d 503, 506-07 (Mo. banc 2009)).

A contested case is "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." § 536.010(4). Because the Board issued its probation violation complaint pursuant to section 324.042, Walzer was entitled to a hearing before the Board could revoke her license: "Any board, commission, or committee within the division of professional registration may impose additional discipline *when it finds after hearing* that a licensee, registrant, or permittee has violated any disciplinary terms previously imposed or agreed to pursuant to settlement." § 324.042 (emphasis added).

Therefore, this appeal comes from the circuit court's review of a contested case, so we review the agency's decision, not the decision of the circuit court. *Ferry v. Bd. of Educ. of Jefferson City Pub. Sch. Dist.*, 641 S.W.3d 203, 206 (Mo. banc 2022) (citing *Mo. Real Est. Appraisers Comm'n v. Funk*, 492 S.W.3d 586, 592 (Mo. banc 2016)); *Johnston*, 462 S.W.3d at 864 (quoting *Armstrong*, 273 S.W.3d at 506-07) ("In either a contested or a non-contested case the private litigant is entitled to challenge the governmental agency's decision. *The difference is simply that in a contested case the private litigant must try his or her case before the agency, and judicial review is on the*

*record of that administrative trial, whereas in a non-contested case the private litigant*

*tries his or her case to the court.*"").

"Article V, section 18 of the Missouri Constitution articulates the standard of judicial review of administrative actions." *Owens v. Mo. State Bd. of Nursing*, 474 S.W.3d 607, 611 (Mo. App. W.D. 2015) (quoting *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009)). On appeal, we must determine whether the actions of the agency "are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record." MO. CONST. art. V, § 18. We will affirm the agency's action unless it:

> (1) Is in violation of constitutional provisions;
>
> (2) Is in excess of the statutory authority or jurisdiction of the agency;
>
> (3) Is unsupported by competent and substantial evidence upon the whole record;
>
> (4) Is, for any other reason, unauthorized by law;
>
> (5) Is made upon unlawful procedure or without a fair trial;
>
> (6) Is arbitrary, capricious or unreasonable;
>
> (7) Involves an abuse of discretion.

§ 536.140.2 (Supp. III 2024). "In reviewing an agency's findings of fact, this Court defers to the agency's credibility determinations and the weight given to conflicting evidence." *Ferry*, 641 S.W.3d at 206. "We will not substitute our judgment for that of the administrative agency on factual matters, but we review any questions of law

concerning an agency's decision de novo." *Kubiak v. Mo. State Bd. of Nursing*, 667 S.W.3d 230, 235 (Mo. App. W.D. 2023) (quoting *Owens*, 474 S.W.3d at 611).

## Point II

In Point II, Walzer asserts the AHC's 2020 ruling (adopted by the Board's 2020 probated license order) prohibiting her consumption of alcohol—with no prior disciplinary history related to *alcohol* abuse—constitutes illegal discrimination under the ADA, rendering the revocation of her license for violating that term unlawful. Walzer, however, waived any challenge to the AHC's terms of probation when she did not seek judicial review of the AHC's 2020 ruling imposing them.

Following the AHC's 2020 ruling, Walzer had thirty days to file a petition with the circuit court to seek judicial review. § 621.145 (Supp. III 2020) ("Except as otherwise provided by law, all final decisions of the administrative hearing commission shall be subject to judicial review as provided in and subject to the provisions of sections 536.100 to 536.140 . . ."); § 536.110.1 (Supp. III 2020) ("Proceedings for review may be instituted by filing a petition in the circuit court of the county of proper venue within thirty days after the mailing or delivery of the notice of the agency's final decision."). Walzer's failure to file a petition within the thirty-day timeframe waived her ability to seek judicial review of the AHC's 2020 ruling, including the validity of its terms. *Williams v. City of Kinloch*, 657 S.W.3d 236, 242 (Mo. App. E.D. 2022) ("A party's failure to file a petition for review within 30 days is fatal to that party's pursuit of judicial review.").

Thus, Walzer's challenge on this appeal to the terms of the AHC's 2020 ruling is untimely and amounts to an impermissible collateral attack. *Walsh v. Mo. State Bd. of Nursing*, 689 S.W.3d 566, 571 (Mo. App. W.D. 2024) ("[T]o the extent Walsh contends that the original order requiring her to submit to drug testing was unwarranted given the nature of her underlying misconduct, Walsh had the opportunity to seek[] judicial review of the original disciplinary order when it was entered; we will not permit her to collaterally attack the original conditions of her probation in this probation violation proceeding.").

In an effort to defeat the application of section 536.110 (Supp. III 2020), Walzer appears to assert that she had no right to seek judicial review of the AHC's 2020 ruling because she was the "prevailing party," apparently because the AHC "granted" her license application after the Board's initial application denial.[5] We disagree.

"Any person who has exhausted all administrative remedies provided by law and who is *aggrieved* by a final decision in a contested case, *whether such decision is affirmative or negative in form*, shall be entitled to judicial review thereof, as provided in sections 536.100 to 536.140 . . ." § 536.100 (Supp. III 2020) (emphasis added). A person

---

[5] To any extent Walzer claims she could not appeal the AHC's ruling on the basis that the AHC awarded all the relief she requested, the record belies her claim. Before the AHC, Walzer objected to the probation terms proposed by the Board and requested that her license be either reinstated fully or with probation terms providing her ADA accommodations, i.e., *not* the probation terms proposed by the Board. Although the AHC overruled the Board's decision to deny her application for a nursing license, the AHC nonetheless ordered the license be subject to the terms of probation proposed by the Board and rejected Walzer's demand for ADA accommodations, thus denying much of the relief Walzer requested from the AHC.

is aggrieved by an administrative action when it directly and immediately prejudices or impairs that person's legally protected rights or interests. *Davis v. St. Charles Cnty.*, 250 S.W.3d 408, 412 (Mo. App. E.D. 2008).

Walzer asserts in this appeal that her rights under the ADA are *currently* prejudiced by the AHC's 2020 ruling and corresponding terms of probation. She has presented no explanation for why these same rights were not *immediately* prejudiced by the same probation terms and refusal to grant ADA accommodations when the AHC originally issued its ruling in 2020.[6] Walzer has presented no valid reason for failing to seek judicial review of the AHC's probation terms when its decision was initially entered in 2020. Thus, her current challenge to the legality of the probation terms imposed by the AHC's 2020 ruling is an untimely argument that has been waived and must fail.

---

[6] Walzer cites *Curtis v. Mo. Bd. for Architects, Pro. Eng'rs, Pro. Land Surveyors & Pro. Landscape Architects*, 534 S.W.3d 264 (Mo. App. W.D. 2017) to argue that a challenge to the terms of a license's probation is not ripe until the Board files a probation violation complaint. Walzer's reading of *Curtis* is inaccurate. There, Curtis sought timely judicial review of the Board's order that found he violated the terms of a prior probation order and placed his architecture license on probation for a new three-year term. *Id.* at 267. The order's terms also provided that Curtis's new probation period would be tolled while he was not actively practicing in Missouri. *Id.* at 272-73. Curtis argued the tolling provision created the *possibility* that his probation could be extended beyond the statutory maximum of five years and, thus, was beyond the Board's authority to impose. *Id.* at 272. We held that the tolling provision would not be ripe for challenge until it *actually* prejudiced him by extending his probationary period beyond the statutory maximum of five years, rendering his challenge premature: "As long as his probationary period, including tolling, does not actually exceed five years, we cannot say that the Board has acted ultra vires in sanctioning him, in the absence of any evidence showing that it has done so." *Id.* at 273.

In contrast to *Curtis*, the challenged probation term here *immediately* and *actually* prohibited Walzer from consuming alcohol without any further qualification or dependence on future developments and, therefore, was ripe for immediate challenge.

Within the argument section of Point II, in violation of Rule 84.04(e),[7] Walzer argues for the first time in her appellate briefing that the Board failed to submit sufficient evidence proving she violated the AHC's probation terms by consuming alcohol. She contends the positive test for alcohol is insufficient evidence of consumption because it does not foreclose the possibility that she only tested positive due to "environmental exposure." Our standard of review for the Board's findings, however, does not require that the Board foreclose every possible alternative interpretation of the evidence. *See Geen v. Mo. Dep't of Mental Health*, 694 S.W.3d 133, 135-36 (Mo. App. E.D. 2024) ("If the evidence supports either of two opposing findings, we are bound by the factual determinations of the agency."). Rather, we must defer to the Board's findings unless no substantial evidence in the record supports the finding or the finding is against the weight

---

[7] All rule references are to I MISSOURI COURT RULES - STATE 2024. Rule 84.04(e) requires that "[t]he argument shall be limited to those errors included in the 'Points Relied On.'" Thus, any argument raised only in the argument section but not in the point relied on preceding that argument section is not preserved for appellate review. *Ziade v. Quality Bus. Sols., Inc.*, 618 S.W.3d 537, 544 (Mo. App. W.D. 2021). Here, Point II challenges the Board's revocation of Walzer's license *solely* by claiming the terms of probation are unlawful and presents *no challenge to the findings* underlying the Board's decision. To any extent Walzer contends Point II should be construed to include a sufficiency-of-the-evidence challenge *in addition* to her argument that the probation terms are unlawful, her point relied on would be multifarious, violating Rule 84.04(d). *See Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014) (explaining that combining a substantial-evidence challenge and misapplication-of-law challenge into the same point on appeal violates rule 84.04(d)). For either violation of Rule 84.04, we would be permitted to disregard Walzer's unpreserved challenge to the Board's factual findings. *Id.*; *Ziade*, 618 S.W.3d at 544. Instead, we have elected to exercise our discretion to review this issue, *ex gratia*. *Ivie*, 439 S.W.3d at 199 n.11; *Deere v. Deere*, 627 S.W.3d 604, 609 (Mo. App. W.D. 2021).

of the evidence.  *State Bd. of Nursing v. Berry*, 32 S.W.3d 638, 640 (Mo. App. W.D. 2000) (citing *Harrington v. Smarr*, 844 S.W.2d 16, 18 (Mo. App. W.D. 1992)).

At the probation violation hearing, Walzer denied consuming alcohol without any explanation for her positive test for the presence of alcohol; meanwhile, the Board submitted the affidavit of an expert witness who concluded that Walzer provided no medical explanation for her positive test.  Furthermore, the four diluted samples and Walzer's inability to explain the variance in her creatinine levels, even though she claimed to consistently use her diuretic medication as prescribed, reasonably suggest that Walzer consumed alcohol and then took fraudulent efforts to mask a positive result during her subsequent drug tests.  On this conflicting evidence, the Board expressly found Walzer's testimony not credible—a credibility finding we must defer to—and concluded she consumed alcohol.

The unexplained positive test for alcohol and four diluted samples constitute substantial evidence—in light of the whole record—to support the Board's finding that Walzer consumed alcohol during the term of her probation.  Thus, the Board's conclusion that Walzer violated a term of her probation is supported by substantial evidence.  Because Walzer violated the terms of her probation, the Board was authorized to revoke her license.  § 324.042 ("Any board, commission, or committee within the division of professional registration may impose additional discipline when it finds after hearing that a licensee, registrant, or permittee has violated any disciplinary terms previously imposed or agreed to pursuant to settlement.  The board, commission, or committee may impose as additional discipline any discipline it would be authorized to impose in an initial

14

disciplinary hearing."); § 335.066.3 (authorizing the Board to revoke a nursing license in a disciplinary hearing).

Given Walzer's checkered history with numerous violations of previous terms of probation and the position that the Board had taken in opposing her 2019 application for licensure by examination in the first instance, she knew that the AHC's 2020 ruling gave her a limited window within which to satisfy her probated license. Once again, however, Walzer continued her established pattern of failing to heed the terms of probation, and the Board was within its lawful authority to revoke her license upon her most recent probation violation, a violation that she fraudulently attempted to conceal when questioned about the circumstances of her probation violation.

Point II is denied.

## Point I

In Point I, Walzer contends the terms of probation in the Board's 2020 order are unlawful and unenforceable to the extent they go beyond the terms contained in the AHC's 2020 ruling. Even if we were to agree that there were "additional" terms in the Board's 2020 order (that Walzer separately initialed each paragraph thereof and signed at the bottom of the order to express her understanding of the terms of the Board's order) making those "additional" terms unlawful and unenforceable, which we do not decide here, the Board still possessed the authority to revoke Walzer's license because she

15

consumed alcohol in violation of the terms contained in *both* the AHC's[8] 2020 ruling and the Board's corresponding 2020 order.

Because the Board had the authority to revoke Walzer's license *regardless* of the validity of the purportedly "additional" terms in its 2020 order, Walzer has not been prejudiced by these alleged "additional" probation terms.

Because the alleged error contained in Point I could not have prejudiced Walzer's rights, we need not review it. *Rasmussen v. Ill. Cas. Co.*, 628 S.W.3d 166, 172 (Mo. App. W.D. 2021) ("No appellate court shall reverse any judgment unless it finds that error was committed by the circuit court against the appellant materially affecting the merits of the action.  [A]ppellate review is for prejudice, not mere error." (alteration in original) (internal citations and quotation marks omitted)).

Point I is denied.

---

[8] To any extent Walzer contends the *Board* cannot impose discipline for Walzer's violations of the *AHC*'s probation ruling, we disagree.  When the AHC reviewed the Board's decision to deny Walzer's application, it effectively stepped into the Board's shoes and issued the order pursuant to the Board's authority.  *See State Bd. of Registration for the Healing Arts v. Trueblood*, 368 S.W.3d 259, 266 (Mo. App. W.D. 2012) ("[T]he function of the AHC in administrative review proceedings is to render the agency's final decision, exercising the same authority as the underlying agency.").  Thus, the AHC's 2020 ruling following a review of the Board's action is functionally an order of the Board itself.

## Conclusion

The circuit court's judgment, affirming the Board's disciplinary order revoking Walzer's license, is affirmed.

_____
Mark D. Pfeiffer, Presiding Judge

Lisa White Hardwick and Thomas N. Chapman, Judges, concur.

17